Debbie SCHRADER, individually and on behalf of all those similarly situated, Plaintiffs,

v.

IDAHO DEPARTMENT OF HEALTH AND WELFARE; Margaret Heckler, in her official capacity as Secretary of the United States Department of Health & Human Services; and the United States Department of Health and Human Services, Defendants.

Civ. No. 83–3146.

United States District Court, D. Idaho.

June 15, 1984.

Allen Wasserman, Coeur d'Alene, Idaho, Howard Belodoff, Idaho Legal Aid Services, Inc., Boise, Idaho, for plaintiffs.

James A. Raeon, Deputy Atty. Gen., Dept. of Health & Welfare, Coeur d'Alene, Idaho, Jeffery Ring, Asst. U.S. Atty., Boise, Idaho, for defendants.

## OPINION

RYAN, District Judge.

The Aid to Families with Dependent Children (AFDC) Program was established by Congress in 1935 as part of the Social Security Act, 42 U.S.C. §§ 601–626. The program is jointly funded by the federal and state governments and eligibility for benefits under the program is based upon the financial need of its recipients or applicants. The federal government bears the majority of the financial burden, while the states bear the responsibility of administering the program on the local level. As part of the task of administration, states are required to adopt state plans. 42 U.S.C. § 601. The states must promulgate regulations for determining applicant eligibility for assistance under the program. These eligibility regulations must be in compliance with the federal regulations which establish the federal criteria for eligibility. The State of Idaho has chosen to participate in the AFDC program and has adopted a state plan implementing the federal eligibility criteria. *See* Idaho Department of Health and Welfare Manual, Title 3, ch. 1, "Rules and Regulations Governing Eligibility for Financial and Medical Assistance." Eligibility for AFDC is primarily contingent upon the amount of income and resources available to applicants or recipients. Prior to November 1, 1983, pursuant to the Idaho plan, certain difficult-to-liquidate, "excess resources" were not counted in determining the eligibility of various applicants.[1] The effect of the plan was to

---

1. Generally, under the then applicable state plan provisions, resources that were not immediately convertible to cash or resources which the applicant was making a good faith effort to sell at fair market value, were not counted as resources currently available for use by the applicant. Idaho Department of Health and Welfare Manual, Title 3, ch. 1, "Rules and Regulations

sanction a "grace period" during which applicants could endeavor to liquidate these excess resources. During this grace period, the excess resources were not counted as available to the applicant, and the applicant, even though owning resources in excess of the limit, would remain eligible for aid.

In 1981, Congress enacted the Omnibus Budget Reconciliation Act (OBRA), Pub.L. No. 97–35, a comprehensive package of measures designed to reduce federal spending by decreasing expenditures in a wide range of federally funded programs and activities. See S.Rep. No. 139, 97th Cong., 1st Sess. 2, reprinted in 1981 U.S.Code Cong. & Ad.News 396, 398. As part of OBRA, a number of adjustments were made to the Social Security Act, including amendments to the AFDC program. Relying on these amendments, the Secretary of Health and Human Services (Secretary) adopted a new policy regarding which resources a state must count in determining applicant eligibility for aid under the program. The new policy adopted by the Secretary prohibited any grace period during which applicants could make good faith efforts to liquidate excess resources.[2]

Responsive to the Secretary's new position on excess resources, the Idaho Department of Health and Welfare (IDHW) moved to amend its eligibility regulations in order to bring its state plan into compliance with the Secretary's position. On November 1, 1983, the IDHW amended its regulations through emergency rulemaking to effectuate the necessary change.[3] Plaintiff class then filed suit in Idaho District Court naming the IDHW as defendant, and requesting declaratory and injunctive relief. Plaintiffs alleged that the new IDHW eligibility regulations were inconsistent with the provisions of the Social Security Act, and that the regulations deprived them of constitutionally protected rights without due process of law in violation of

Governing Eligibility for Financial and Medical Assistance," § 3–1355.01(a) and (d).

**2.** The Secretary noted in her preamble to the federal regulations governing eligibility that: "Assistance cannot be paid for any month in which the recipient has liquid or non-liquid resources which exceed the $1,000 limit prescribed by the statute." 47 Fed.Reg. 5657 (1982)

**3.** Prior to November 1, 1983, the applicable Idaho regulation read:

Excess Resource Exception. Excess non-excluded resources owned or possessed by an A/R must not be counted toward the resource limits in Manual Section 3–1345 if the A/R did not conceal the resource and at least one (1) of the following conditions applies:
(a) The resource is not immediately convertible into cash and a reasonable time is needed to convert it to cash; or
(b) The A/R is not the sole owner and:
   (1) The other owners are unwilling to sell the resource and divide the proceeds; or
   (2) The value of the interest owned by the A/R is insufficient to justify the expense of making the resource available; or
   (3) The interest is not saleable; or
(c) The A/R is incompetent and:
   (1) Either there is no legal guardian; or
   (2) The value of the resource is insufficient to justify the expense of making the resource available; or
(d) The A/R has expressed an interest in disposing of the excess resource and is making a reasonable effort to dispose of the resource by offering it for sale for at least ninety per cent (90%) of current market value in an area where it could command a market and:
   (1) No buyer has been found; and
   (2) It appears that the resource is not readily saleable.
(e) The Field Office must advise an A/R with excess resources of the conditions for excluding excess resources.

Following the November 1, 1983, emergency rulemaking, the regulation read:

Excess Resource Exception. Excess non-excluded resources owned or possessed by an A/R must not be counted toward the resource limits in Manual Section 3–1345. if the A/R did not conceal the resource and at least one (1) of the following conditions applies:
(a) The A/R is not the sole owner and:
   (1) The other owners are unwilling to sell the resource and divide the proceeds; or
   (2) The value of the interest owned by the A/R is insufficient to justify the expense of making the resource available; or
   (3) The interest is not saleable; or
(b) The A/R is incompetent and:
   (1) Either there is no legal guardian; or
   (2) The value of the resource is insufficient to justify the expense of making the resource available.

Idaho Department of Health and Welfare Manual, Title 3, ch. 1, "Rules and Regulations Governing Eligibility for Financial and Medical Assistance," § 3–1355.01.

42 U.S.C. § 1983 and the fourteenth amendment of the Constitution.

The Secretary, after having been joined as a party defendant in the state action, removed the matter to this court noting federal jurisdiction. 28 U.S.C. §§ 1441(a), 1444 and 1446. Plaintiffs then moved this court for a preliminary injunction to prohibit the IDHW from implementing the new eligibility regulations. Plaintiffs also sought to enjoin the Secretary from requiring the state's implementation of the new eligibility regulations as a condition precedent to state participation in the federal AFDC program. This court, after careful review, determined that the plaintiffs were threatened with irreparable injury and that the balance of hardships tipped decidely in their favor. Further, the court found that there were serious questions going to the merits of plaintiffs' allegations making them a fair ground for litigation. The court then granted the preliminary injunction requested.

Plaintiffs then moved for summary judgment requesting a permanent injunction. At oral argument, the parties agreed that there were no material facts in dispute and that a judgment as a matter of law could be entered.

The only issue raised by the facts and before the court on plaintiffs' motion is whether the IDHW should be enjoined from implementing its regulations as amended. To determine this issue, the court must first determine whether the Secretary has abused or exceeded her authority in requiring the state regulatory amendments now under attack.

### Standard of Review

Whether the IDHW should be enjoined from implementing its new regulations is directly contingent upon whether the Secretary's new position in regard to resources violates established principles of administrative law. Viewed in this light, the issue is reduced to whether the current position taken by the Secretary in her regulations and their interpretation exceeds or violates her statutory power.

■■■ Where, as here, a statute expressly entrusts the Secretary with the responsibility for implementing a statutory program by regulation,[4] judicial review is limited to determining whether the implementing regulations promulgated exceed the Secretary's statutory authority or whether the regulations are arbitrary and capricious. *See* 42 U.S.C. § 1302; *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). In addition, in reviewing the Secretary's interpretation of her own regulations, the court must necessarily look to her administrative construction. The ultimate criterion is the Secretary's interpretation which becomes controlling unless it is plainly erroneous, inconsistent with the regulation, exceeds her statutory authority, or arbitrary and capricious. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *United States v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). Our review of the Secretary's position then becomes two-part: First, the court must review whether the Secretary, by adopting the regulations in question, has exceeded her statutory authority or acted arbitrarily and capriciously. Second, if the Secretary has not abused her authority, the court must review whether the Secretary's interpretation of her own regulations is inconsistent with the language of the regulations, plainly erroneous, arbitrary and capricious, or exceeds her statutory authority.

### OBRA Amendment

As a result of OBRA, 42 U.S.C. § 602 was amended to include subpart (a)(7)(B), which provides that the state agency:

> shall determine ineligible for aid any family the combined value of whose resources ... exceeds $1,000 or such lower amount as the State may determine, but not including as a resource for purposes of this paragraph a home owned and occupied by such child, relative, or other

**4.** 42 U.S.C. § 1302.

individual and so much of the family member's ownership interest in one automobile as does not exceed such amount as the Secretary may prescribe ....

Prior to this amendment, no statutory language had established a dollar limit on resources. Rather, the Secretary had established by regulation, a resource limitation of $2,000. The OBRA amendment was the first time Congress specifically determined a dollar value limitation.

### Regulation 233.20(a)(3)(ii)(D)

■ Prior to the OBRA amendment, the Secretary had promulgated a regulation defining the term "resource." The Secretary's regulation provided:

Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance;

45 C.F.R. § 233.20(a)(3)(ii)(D). Subsequent to OBRA, Regulation 233.20(a)(3)(ii)(D) has remained unchanged. Plaintiffs have not alleged that the language of the regulation exceeds the Secretary's statutory authority or that it is arbitrary or capricious. In reviewing the regulation, it is clear that it is neither. Section 602(a)(7)(B) requires state agencies to "determine ineligible for aid any family ... whose resources ... exceed $1,000 ...." The statute does not define which "resources" must be counted toward the $1,000 limitation. However, the regulation does define which resources must be counted and segregates them into two categories: First, resources which are "actually available" must be counted towards the resource limit. Second, where the applicant has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance, that liquidated sum must also be counted as a resource available for current use. Nothing in the language of the regulation contrasts with the language or purpose of the statute. The purpose of OBRA was to bring the rapid growth of federal spending under control. See "Views of the Committee on the Budget," S.Rep. No. 139, 97th Cong., 1st Sess. 2, reprinted in 1981 U.S.Code Cong. & Ad.News 397. The language of the regulation defining which resources must be counted in determining eligibility is consistent with this statutory purpose. Examining the explicit language of Section 602(a)(7)(B) and keeping in mind the congressional purpose of OBRA, it is clear that the Secretary's regulation does not exceed her statutory authority. Nor can it be said that the definitions attributable to "resources" are arbitrary or capricious. It is, therefore, the court's determination that the regulation, as adopted by the Secretary, is not susceptible to attack as being an abuse of the Secretary's rulemaking power.

### Secretary's Current Interpretation of Her Regulation

Having determined that the Secretary's regulation in question does not exceed the Secretary's authority and is not arbitrary or capricious, the court now must review whether the Secretary's current interpretation of her regulation is an abuse of her rulemaking authority.

Following the adoption of OBRA, the Secretary promulgated new interpretive rules relating to the AFDC program. In the preamble to these regulations, the Secretary commented on her interpretation of the resource limitation contained in the OBRA amendment.

Comment: Clarification was requested on how to proceed when an applicant or recipient has non-liquid resources such as a car or real property that could meet current need, but which must be disposed of to retain eligibility.

Response: Assistance cannot be paid for any month in which the recipient has liquid or non-liquid resources which exceed the $1,000 limit prescribed by the statute.

47 Fed.Reg. 5657 (1982). It is clear from this preamble that all resources, whether

or not currently available, must be counted in determining eligibility for the program. Under this language, no "grace period" can be granted by the various state plans. Plaintiffs allege that the Secretary's interpretation of her regulation conflicts with or exceeds her statutory authority. In support of this allegation, plaintiffs primarily rely upon the holding in *Turner v. Prod,* 707 F.2d 1109 (9th Cir.1983). Plaintiffs advance that *Turner* stands for the proposition that, in determining eligibility for federal assistance, states must take into consideration only "income" and "resources" which are *actually* and *currently available* to applicants. Plaintiffs maintain that the Secretary's current interpretation of her regulation adopts a policy in regard to "resources" which ignores the brutal reality that some resources which are actually owned by applicants are not currently available for their support and maintenance.

■ In *Turner,* the Ninth Circuit construed an analogous statutory provision[5] as prohibiting the Secretary from counting as "income" for purposes of eligibility, mandatory payroll tax withholdings. The court undertook a rather lengthy discussion of the statute, the history of its legislative and administrative interpretation, and the congressional purpose underlying the motivation for the AFDC program. It was the court's conclusion that, for purposes of determining the amount of "income" received by an applicant, only that income actually and *currently available* could be counted. The court concluded that any other interpretation of the statute would have been inconsistent with the purposes of the statute. Plaintiffs urge an analogous treatment of the "resource" provisions of the statute. After careful consideration, the court agrees that "resources" must be treated similarly to "income" and that only resources which are currently available may be counted toward the resource limitation. However, whether a "resource" is currently available is a fundamentally different question from whether "income" is currently available. It is relatively easy to determine whether "income" is currently available. The Secretary merely needs to determine whether the applicant has the current ability to purchase currently needed items with the "income" source in question. The inquiry as to whether a "resource" is currently available is a more difficult inquiry. It cannot be disputed that some resources are more easily sold and converted to cash than others. To this extent, some types of resources are more currently available than other types of resources. However, it is also generally true that all resources have a price at which they may be liquidated. Even "hard-to-liquidate" resources may be converted to cash if offered at the right price. In this sense, hard-to-liquidate resources are resources which could be currently available to an applicant. Hard-to-liquidate resources must be distinguished from resources in which the applicant has no legal ability to convert to cash. Certainly, if the applicant has no legal right to the resource, the resource cannot be considered currently available to meet the applicant's needs. Turning to the Idaho regulations in question, prior to November 1, 1983, the Idaho regulations provided:

*Excess Resource Exception.* Excess nonexcluded resources owned or possessed by an [applicant] must not be counted toward the resource limits ... if ...

(a) The resource is not immediately convertible into cash and a reasonable time is needed to convert it to cash ...

. . . .

(d) The [applicant] has expressed an interest in disposing of the excess resource and is making a reasonable effort to dispose of the resource by offering it for sale for at least ninety per cent (90%) of current market value in an area where it could command a market and:

(1) No buyer has been found; and

(2) It appears that the resource is not readily saleable.

**5.** 42 U.S.C. § 602(a)(8).

Idaho Department of Health and Welfare Manual, Title 3, ch. 1, "Rules and Regulations Governing Eligibility for Financial and Medical Assistance," § 3–1355.

■ Under the regulations above, the IDHW was allowing a grace period during which resources were not counted toward the resource limitation if such resource was not immediately convertible to cash and the applicant was making a good faith effort to dispose of the resource. This court reads the regulations as allowing resources which are currently available for sale by the applicant to be excluded from the resources countable towards the resource limitation. After careful consideration, it is this court's determination that such resources cannot appropriately be classified as not currently available since the applicant has the legal ability to dispose of the item and use the proceeds toward current needs. The court agrees that Idaho's old "grace period" in regard to this type of resource is inconsistent with the Secretary's current position. Further, to the extent that the Secretary's current interpretation of her regulations prohibits the exclusion of resources which the applicant has a legal ability to sell, such interpretation does not exceed the Secretary's authority, nor does it run afoul of the principle enunciated in *Turner v. Prod.* This court then finds as a matter of law that the Secretary's current position in regard to resources is not inconsistent with her regulation; is not plainly erroneous, arbitrary or capricious; and does not exceed her statutory authority. Having so determined, no permanent injunction is necessary or appropriate.

### Stay Pending Appeal

■ Finally, plaintiffs have moved this court for an order staying the dissolving of the preliminary injunction pending an appeal in the event that this court determines that no permanent injunction should issue on their behalf. The standard for evaluating stays pending appeal is similar to that employed when determining whether to grant a preliminary injunction. *See Neva-*

*da Airlines, Inc. v. Bond,* 622 F.2d 1017, 1018, n. 3 (9th Cir.1980). In this circuit there are two interrelated legal tests for the issuance of a preliminary injunction. The tests are not separate, but rather represent the outer reaches of a single continuum. *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor. The relative hardship to the parties is a critical element in deciding at which point along the continuum a stay is justified. As noted in this court's order granting the preliminary injunction, the balance of hardships tips sharply in favor of plaintiffs. Should this court fail to stay dissolving the preliminary injunction pending appeal, members of the plaintiff class would lose their benefits under the AFDC program. While the loss of money is not normally considered irreparable, this court recognizes that those affected in this case are not average citizens, but rather are those who are in the grip of poverty. Persons in the plaintiff class rely upon the moneys received through the AFDC program to maintain the barest level of subsistence. The Supreme Court has recognized that persons in brutal need of public assistance are entitled to special protection since the loss of their benefits can have such terrible and immediate impact upon their lives. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In contrast, should this court refuse to stay dissolving the preliminary injunction, the government would be required to continue providing benefits to qualifying members of the plaintiff class. Such an outcome would merely maintain the status quo. Under these circumstances, this court finds that the balance of hardships tips sharply in favor of plaintiffs.

The court is also of the opinion that there are serious legal questions raised going to

the heart of plaintiffs' requested relief. Indeed, the court, in considering the merits of the case upon plaintiffs' Motion for Summary Judgment, is acutely aware of the complex and serious legal questions raised by the parties. The court, therefore, determines that the stay requested by plaintiffs should issue pursuant to Rule 62(c) of the Federal Rules of Civil Procedure.

An order will be entered in accordance with this Opinion.