Jacqueline DAVIS, et al.

v.

William L. LUKHARD, et al.

Civ. A. No. 84–0126–R.

United States District Court,
E.D. Virginia,
Richmond Division.

June 29, 1984.

Edward M. Wayland, Charlottesville-Albemarle Legal Aid Soc., Charlottesville, Va., Jill A. Hanken, Virginia Poverty Law Center, Richmond, Va., for plaintiffs.

John A. Rupp, Robert W. Jaspen, Asst. U.S. Attys., Richmond, Va., for defendants.

## ORDER AND OPINION

WARRINER, District Judge.

Presently before the Court are the motions to dismiss or for summary judgment by defendants William L. Lukhard, Commissioner of the Virginia Department of Social Services, and Margaret M. Heckler, Secretary of Health and Human Services; and the cross-motion for summary judgment by plaintiffs Jacqueline Davis, Mary E. Spencer, Patricia De Franzo, and Peggy Staton. The motions have been fully briefed, and the matter is therefore ripe for adjudication.

Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages under 42 U.S.C. § 1983 and 28 U.S.C. § 1331, as well as attorneys' fees and costs. The Court has jurisdiction as to the State defendants under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202, 1331, and 1343(3). As to the federal defendant, jurisdiction is appropriate under 28 U.S.C. §§ 2201, 2202 and 1331.

### I

### FACTUAL BACKGROUND

Aid for Dependent Children (AFDC) is a federal-State public assistance program authorized by the Social Security Act. 42 U.S.C. §§ 601–76. Participating States pro-

vide assistance to those needy families that include a dependent child as that term is defined within the Act. 42 U.S.C. §§ 606(a) and 607(a). A percentage of the funds expended by a State is reimbursed by the federal government. 42 U.S.C. § 603. In return for the federal funds, States must administer their programs pursuant to a State plan which is in accordance with federal statutory provisions and HHS regulations governing AFDC. 42 U.S.C. § 602. Indeed, once a State submits a plan, if the Secretary finds that the plan fulfills all requirements of Title 4(A) of the Act, and the regulations promulgated under that Section, the Secretary must approve the plan. 42 U.S.C. § 602(b). The State thus becomes eligible for federal financial participation in expenditures which the State makes in accordance with this approved State plan. 42 U.S.C. § 603.

An AFDC family's monthly grant is intended to be limited to the amount which the family needs. The statutes and the regulations attempt to accomplish this purpose by requiring that the State first set a dollar figure, called the "standard of need," reflecting its view of the amount necessary to provide for such essentials as clothing, shelter, food, for hypothetical families of various sizes. Next, the State determines the "level of benefits" it will pay, which need not be the full "standard of need" amount. The State then assesses an applicant-family's income and resources and compares the sum of money found to be available to it without regard to aid, with the appropriate pre-determined benefit level. If the funds available fall below that level, its AFDC grant would be the amount necessary to close the gap.

Plainly then, an important step in determining eligibility for AFDC benefits is the State agency's determination of the resources available to the family. Federal guidelines, both statutory and regulatory, are provided for this purpose. Under 42 U.S.C. § 602(a)(7)(A), a State agency is required in determining eligibility for AFDC benefits to "take into consideration any other income and resources of any child or relative claiming aid to families with de-pendent children." This provision has been amplified by regulations of the Department of Health and Human Services (HHS) in 45 C.F.R. § 233.20(a)(3)(ii)(D), as amended, 47 Fed.Reg. 5675 (February 5, 1982), as follows:

> [R]esources available for current use shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

Although the federal regulations did not specify a grace period for the disposal of non-liquid assets, States, which historically have been permitted to exercise discretion and reasonable flexibility in administering these regulatory requirements, sometimes opted to allow applicants and recipients a grace period for this purpose. In other words, the State could, in its discretion, disregard a non-liquid asset in computing a potential recipient's resources, thus giving that recipient a period of time in which to liquidate the asset. During the interim the asset was not considered an "available resource." Virginia was such a State.

Former Section 303.5 of the Virginia AFDC manual was, until 1 February 1984, the Virginia version of what was called the "available resources" rule. Section 303.5 permitted applicants for AFDC benefits who had such non-liquid resources a specific period of time within which to convert such resources into liquid assets for use by the household in meeting current needs. For personal property, the allowable period was 60 days; for real property, it was six months. During this period of time, the household was approved for AFDC benefits, but at the end of such period, the household was rendered ineligible if it had not liquidated the resource. However, if the household demonstrated to the local agency's satisfaction that it had made reasonable efforts to sell the property, but without success, then the household would remain eligible so long as it continued mak-

ing reasonable, good faith, efforts to sell the property. If the household succeeded in doing so, the proceeds would be counted as an "available resource" until exhausted.

This section also provided for the situation where a household demonstrated that it was not possible for it to sell the resource at all. In such a case, the resource was never considered as "available" and the eligibility of the household was unaffected by its ownership of the property in question.

In 1981, however, Congress enacted the Omnibus Budget Reform Act (OBRA), a comprehensive package of measures whose purpose was to reduce federal spending by decreasing expenditures in a wide range of federally-funded programs and activities. Among these was the Aid for Dependent Children Program. Added was 42 U.S.C. § 602(a)(7)(B) which requires that for a State to qualify for federal financial participation it must:

> Determine ineligible for aid any family the combined value of whose resources (reduced by any obligations or debts with respect to such resources) exceeds $1,000 or such lower amount as the State may determine, but not including as a resource for purposes of this subparagraph a home owned and operated by such child, relative, or other individual and so much of the member's ownership interest in one automobile as does not exceed such amount as the Secretary may prescribe.

After OBRA's enactment, the Secretary promulgated new interpretative rules germane to the AFDC program:

> Comment: Clarification was requested on how to proceed when an applicant or recipient has non-liquid resources such as a car or real property that could meet current need, but which must be disposed of to retain eligibility.

> Response: Assistance cannot be paid for any month in which the recipient has liquid or non-liquid resources which exceed the $1,000 limit prescribed by the statute.

47 Fed.Reg. 5657 (February 5, 1982)

On 12 January 1984, defendant William L. Lukhard sent to each social services agency in the State of Virginia a copy of AFDC Transmittal No. 90. One of the provisions of this transmittal deleted Section 303.5, effective 1 February 1984. From that point on, all resources, regardless of their availability, were to be counted in determining eligibility.

## II

### ISSUES

The issues are sharply drawn. Plaintiffs take the position that 42 U.S.C. § 602(a)(7)(B) notwithstanding, the congressional purpose that only immediately available resources should be counted in determining program eligibility remains intact. With this premise in mind, plaintiffs then argue that the deletion of Section 303.5 from the Virginia AFDC manual is in flat contradiction to the Social Security Act and the regulations promulgated thereunto.

Plaintiffs argue that the federal regulations define resources under 42 U.S.C. § 602(a)(7) as "resources available for current use" and provide that resources are considered "available" when they are "actually available." 45 C.F.R. § 233.-20(a)(3)(ii)(D), as amended, 47 Fed.Reg. 5675 (February 5, 1982). Because such non-liquid resources as real property and burial plots are not "available" to a household, their value may not be considered as resources available within the meaning of § 602(a)(7)(B) prior to their liquidation.

Plaintiffs contend additionally that the passage of OBRA did not alter the "availability of resources" rule in the slightest, that Congress used "resources" in 42 U.S.C. § 602(a)(7)(B) to mean currently available resources, thus making the defendants' actions in deleting Section 303.5 of the Virginia manual not only unnecessary but illegal.

■ Plaintiffs also allege that Virginia's revised regulations violate equal protection

by treating them differently from other AFDC recipients, without a rational basis, solely because of their ownership of non-liquid resources which cannot be converted into liquid assets for use in meeting current needs.[1]

Defendants, on the other hand, assert that Congress clearly evidenced its intention to limit, for the first time in the history of the AFDC program, the amount of non-exempt resources which can be owned by applicants and recipients. Congress not only set a dollar figure—$1,000 or lower— as a resource ceiling, but specifically deleted from that figure only 1) the home owned by the recipient and occupied by the dependent child, and 2) whatever portion of the member's ownership interest in one automobile might be allowed by the Secretary.

Defendants thus argue that 42 U.S.C. § 602(a)(7)(B) mandated Virginia's giving an inclusive definition of resources, not as those actually available for current use, but all resources of any value whatsoever except for the two statutorily mandated exceptions.

The question presented is a narrow one: Did OBRA alter the statutory and regulatory definition of "resources" so as to include all of an applicant's resources, liquid or non-liquid, with no grace period allowed applicants to dispose of non-liquid assets and no dispensation given applicants who owned non-liquid assets thought to be incapable of disposition.

For the reasons set forth below, I grant plaintiffs' motion for class certification, deny plaintiffs' motion for summary judgment. I grant defendants' motion to dismiss, or alternately, for summary judgment.

### III

### CERTIFICATION OF THE CLASS

Plaintiffs have moved this Court for an order in accordance with Fed.R.Civ.P.

23(c)(1), directing that this action be maintained as a class action under Rule 23(a) and 23(b)(2). Plaintiffs allege that the class they seek to represent consists of all persons who have been excluded from participation, or who will be in the future excluded from participation, in the Virginia AFDC Program, because they are members of households which possess non-liquid resources that cannot be used to meet the current needs of the household.

Plaintiffs allege that it is clear from the very nature of this situation that class action certification is appropriate as membership in the class is "plainly quite numerous already, and the numbers involved will grow as time goes on absent intervention by this Court." *Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Certification of a Class at 3.*

Defendants disagree. They remind me that the Court must have information sufficient to form a reasonable judgment as to whether class certification requirements are met. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Although the requirement of Fed.R.Civ.P. 23(a)(1) is often referred to as one of "numerosity" it is more appropriately an "impracticability" requirement. Several factors are relevant to a Court's determination that the joinder of all the members is impracticable, the size of the class itself being the most obvious consideration.

While the party instituting the action does not need to show the exact numbers of potential members in order to satisfy this prerequisite he does bear the burden of showing impracticability and his mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1).[2]

However, I think it fair to conclude that even if the named plaintiffs were at

---

1. I view this argument as meritless; the ownership of assets, whether liquid or non-liquid, is itself a rational distinction as between claimants' entitlements to public funds.

2. Wright & Miller, *Federal Practice and Procedure: Civil Section 1762.*

present the only individuals affected by Virginia's abolition of its "availability rule," it is inexorable that as months and years go by more and more individuals will be added to this class and it would be well to dispose of the matter for once and all. Accordingly, plaintiffs have established that it would be impracticable to join all members of the class in this lawsuit.

■ That there are central questions of law or fact common to this class is not open to dispute. The narrowness of the issue presented—deletion of Section 303.5 of the Virginia Manual and its effects on owners of non-liquid assets—is indeed the common grievance shared by the putative representatives of this class. All own non-liquid assets which cannot be immediately disposed of; all have been advantaged or would have been advantaged by provisions permitting them a grace period to dispose of the assets; all have or would have been granted the benefit of a good faith effort to divest themselves of assets which proved incapable of such divestiture. The resolution of the legal question, *i.e.,* whether defendants' action violates the Social Security Act, is the only question of law presented by this claim and is the one question common to these plaintiffs.

That the claims or defenses of the representative parties are typical of the claims or defenses of the class is likewise beyond dispute. The claim is the same among all: deprivation of benefits because of ownership of non-liquid assets which cannot immediately be sold. Nor are these plaintiffs in a situation where the question of their raising affirmative defenses is even relevant. They have been denied or are about to be denied AFDC benefits; their entitlement to these benefits is not at issue; their

good faith in attempting to dispose of these assets is not at issue; these non-liquid assets must now be computed in determining their worth and consequently their entitlement to benefits.

As to Fed.R.Civ.P. 23(a)(4), it seems equally clear that the named plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have satisfied the prerequisites of Rule 23(a), and, it appears as well, have met the requirements of Rule 23(b)(2).

Accordingly, concluding that all prerequisites to a class action in Court with Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure are present, and deeming it proper so to do, it is ADJUDGED and ORDERED that this action be certified as a class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

It is further ADJUDGED and ORDERED that the class so certified is defined as:

A class of all persons who have been excluded from participation, or who will in the future be excluded from participation, in the Virginia Aid For Dependent Children Program, because they are members of households which possess resources of whatever degree of liquidity or non-liquidity in excess of $600 exclusive of a residence owned and operated by a member of such household and exclusive of such member's ownership interest in one automobile.

## IV

### LEGISLATIVE HISTORY

Because this is a case of first impression in this Circuit[3] my starting point must be

---

**3.** *Bell v. Massinga,* 721 F.2d 131, 133 (4th Cir. 1983) dealt with whether mandatorily withheld taxes (federal, State, and local income taxes, and FICA taxes) were to be treated as income available to an AFDC family with an employed member. The Fourth Circuit acknowledged that there was conflict between two circuits which had previously decided the issue (*James v. O'Bannon,* 715 F.2d 794 (3d Cir.1983) and *Turner v. Prod,* 707 F.2d 1109 (9th Cir.1983)). The Ninth Circuit in *Turner* had held that "in-

come" as used in Section 602(a)(7) meant income after such mandatory taxes had been withheld. The Third Circuit in *James* held to the contrary, *viz.,* that gross income was to be the starting point for determining AFDC eligibility and benefits.

The Fourth Circuit stated itself to be in agreement with the Third Circuit and affirmed the judgment of the District Court which had simi-

the legislative and administrative histories. In the case of AFDC, the statute itself states its purposes. 42 U.S.C. § 601 states in relevant part:

For the purpose of authorization of appropriations ... enabling each State to furnish financial assistance ... to needy dependent children and the parents or relatives with whom they are living ... and to help parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection....

The Supreme Court has construed and commented at length upon these purposes in *Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974). *Shea* ultimately teaches two things: in construing AFDC legislation, a court should look first to the language and second to the underlying purposes of the Act. In *Shea,* the Supreme Court struck down an agency-approved practice in part because it undermined one of the Act's principle purposes, *i.e.,* it discouraged welfare recipients from working by its failure to reimburse them fully for their working expenses. *Id.* at 265, 94 S.Ct. at 1756. The statutory language embodying the purposes of AFDC was not amended in 1981 by the Omnibus Budget Reconciliation Act.

In *Philadelphia Citizens In Action v. Schweiker,* 669 F.2d 877, 879 (3d Cir.1982), the Court of Appeals observed, albeit without citing authority:

The primary purpose of the OBRA amendments to the AFDC program is to reduce or eliminate welfare benefits for those considered by Congress to be less needy than those completely without resources—persons or households that have available other sources of income or resources with which to support themselves.

As the Third Circuit pointed out in *Turner v. Prod,* 707 F.2d 1109, 1121 (9th Cir.

1983), it is necessary that a court reach a reading which accommodates the purposes of both pieces of legislation as harmoniously as possible. This view of the process of statutory reconciliation is buttressed by the Supreme Court's statement in *Lorillard v. Pons,* 434 U.S. 575, 580–81, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978):

Congress is presumed to be aware of an administrative or judicial interpretation when it re-enacts a statute without change [citations omitted]. So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress can normally be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

In other words, in determining the effect that OBRA amendments had on the long-standing State practice of allowing AFDC households a grace period for the disposal of excess property, the Court must keep in mind (1) that the statutory purpose of AFDC was unchanged by OBRA, and (2) that the 97th OBRA Congress is presumed to have known of these long-standing State practices.

I turn, therefore, to the disputed statutory language of 42 U.S.C. § 602(a)(7)(B). Defendants take the position that Congress could not have more clearly evidenced its intention to limit, for the first time in the history of the AFDC program, the amount of non-exempt resources, whether "available" or not, which can be owned by applicants and recipients. Defendants base their argument on statutory language which determines a family ineligible for aid whose resources exceed $1,000 [Virginia has followed the statutory permission of setting a lower amount, *viz.,* $600]. Congress specifically exempted from its computation the value of a home owned and occupied by a dependent child, by his relatives, or other individual. Nor was the member's ownership interest in one automobile to be included. From this language

larly determined AFDC eligibility and benefits on the basis of gross income.

The only court to address the specific issue presented here is the United States District Court for Idaho *Schrader v. Idaho Department of Health and Welfare, et al.,* 590 F.Supp. 554 (D.Idaho, 1984).

See discussion of these three holdings *infra.*

the Secretary infers the congressional intent to include as a recipient family's resources all its other assets, liquid *and* nonliquid, and whether capable of swift liquidation or not.

Prior to the enactment of OBRA, the Secretary had promulgated a regulation in which the term "resource" was defined thus:

> Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

45 C.F.R. § 233.20(a)(3)(ii)(D). This regulation has remained unchanged, even in the face of the enactment of OBRA. Defendants argue that by specifically testing certain excluded assets in § 602(a)(7)(B) Congress evidenced its intent to have every other kind of asset, regardless of its supposed liquidity, count toward determining that family's eligibility. With this position, I must agree.

## V

## SUMMARY JUDGMENT

It is against this background of legislative history and analogous rulings that plaintiffs' and defendants' cross-motions for summary judgment must be examined.

It will be recalled that the Fourth Circuit in *Bell v. Massinga*, 721 F.2d at 133, specifically approved the Third Circuit's holding in *James v. O'Bannon*, 715 F.2d 794 (3d Cir.1983), that the post-OBRA definition of earned income must be gross income, regardless of the fact that withheld taxes were not immediately available to the wage earners and, except for refunds, would never be available.

In *Bell*, the Fourth Circuit addressed the issue of whether, since enactment of OBRA, mandatorily withheld taxes were to be treated as income available to an AFDC family with an employed member. The

Court acknowledged that the two courts of appeals which had considered the question had arrived at conflicting answers. In *Turner v. Prod*, 707 F.2d 1109 (9th Cir. 1983), the Ninth Circuit, looking at the long-standing, pre-OBRA construction of the regulations, concluded that "income" as used in § 602(a)(7) meant income after mandatorily withheld taxes; therefore, take-home pay was to be the beginning point for determining AFDC eligibility. The Third Circuit in *James* held to the contrary, concluding that the legislative history made clear that the congressional intent was to set gross income as the starting point for determining AFDC eligibility.

The Fourt Circuit stated in *Bell:*

> We can add nothing new to the discussion. Nor can we resolve the conflict between the two circuits. Certainly it is beyond our function as judges to express any views with regard to the social desirability of the policy determinations made by Congress when it enacted OBRA. Confining ourselves to the legal issues, we can only say that, after careful study and deliberate thought, we find ourselves in agreement with the views of the Third Circuit. . . .

421 F.2d at 133.

Being guided by this holding of the Fourth Circuit, I must grant defendants' motion to dismiss or in the alternative for summary judgment. The Fourth Circuit has taken the position that OBRA did, indeed, work a change in the manner of determining eligibility of AFDC families. Specifically, income hitherto not counted toward an applicant's eligibility because not immediately available will now be so counted. The Fourth Circuit has said specifically that even though items such as FICA tax, federal income tax, and State income tax are withheld from an employee and are in no sense available for his use, it is his gross income that will determine his eligibility for AFDC benefits. I am constrained to apply this same logic to an applicant's resources, liquid or non-liquid.

I am supported in this view by *Schrader v. Idaho Department of Health and Wel-*

*fare,* 590 F.Supp. 554 (D.Idaho 1984). The Idaho district court, faced with an identical situation held:

> The inquiry as to whether a 'resource' is currently available is a more difficult inquiry [than one into whether income is currently available]. It cannot be disputed that some resources are more easily sold and converted to cash than others. To this extent, some types of resources are more currently available than other types of resources. However, it is also generally true that all resources have a price at which they may be liquidated. Even 'hard-to-liquidate' resources may be converted to cash if offered at the right price. In this sense, hard-to-liquidate resources are resources which could be currently available to an applicant. Hard-to-liquidate resources must be distinguished from resources in which the applicant has no legal ability to convert to cash. Certainly, if the applicant has no legal right to the resource, the resource cannot be considered currently available to meet the applicant's needs.

590 F.Supp. at 559.

What makes the *Schrader* decision particularly interesting is that it is premised on an agreement, not with *James,* but with *Turner.* The Idaho district court reasoned, like *Turner,* that only income could be counted which was currently available; it then went on, however, as quoted above, to state that these hard-to-liquidate resources at issue were currently available under the reasoning of *Turner.*

 Thus, I reach my decision today by two alternative routes. The Fourth Circuit, following the *James* reasoning, has stated that gross income must be the starting point to determine eligibility, even though mandatorily withheld taxes are or may never be actually available to the applicant for his current use. Similarly, I hold that non-liquid resources, even though difficult to reduce to cash at a price desired by the seller, must be counted toward an applicant's worth and consequently toward his eligibility. Or, reasoning with the *Schrader* court, I can apply the *Turner* logic that only currently available income be the criterion for eligibility, and view hard-to-liquidate resources as affecting eligibility, since these resources can be liquidated even if at a reduced price. The fact that the price obtainable may not meet some appraiser's opinion as to the "fair market value" is not material. It is simply an undeniable fact that *a* price exists at which any good of value can be sold.

Plaintiffs' cross-motion for summary judgment is DENIED.

Defendants' motion to dismiss and, in the alternative, for summary judgment, is GRANTED.

And it is so ORDERED.