**In re CHANDLER AIRPARK JOINT VENTURE I, Debtor.**

**Bankruptcy No. B 91–02270–PHX RGM.**

United States Bankruptcy Court, D. Arizona.

Jan. 9, 1992.

Alan A. Meda, Law Offices of Robert M. Cook and Associates, Phoenix, AZ, for debtor.

Shelton L. Freeman and Marc H. Harris, Beus, Gilbert & Morrill, Phoenix, AZ, for Dwight W. Patterson.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

In this Chapter 11 case, the Court took under advisement after a hearing in Phoenix on December 4, 1991, issues concerning confirmation of the proposed plan of reorganization filed by Dwight W. Patterson. Debtor has objected to confirmation. The record consists of the Court's file and a stipulation of facts containing certain relevant contract documents. The parties have briefed the legal issues, and the Court has reviewed the record and intends this Memorandum as its findings of fact and conclusions of law as to the issues raised in this case. F.R.B.P. 7052.

*Background.*

In 1986, Dwight W. Patterson ("Patterson") sold 560 acres of real estate to Patterson Farms, a partnership, on credit. As security for the purchase price, Patterson Farms granted Patterson a first priority deed of trust on the land. In August, 1987, Patterson Farms in turn sold a portion of the property (71.24 acres) to Debtor, a joint venture, agreeing to finance the purchase price. In order to obtain a release of Patterson's trust deed on the property sold to Debtor, the parties negotiated an agreement whereby Patterson was granted a new, first priority trust deed on the real estate conveyed to Debtor, and Patterson Farms was granted a second deed of trust.

Debtor was required to make payments on Patterson Farms' note in satisfaction of the terms of both the Patterson and Patterson Farms deeds of trust. In addition, the Patterson trust deed provided for release of its lien on the property by payment of a "release price" on a per parcel basis. Debtor is not obligated to make payments to Patterson, and is only obligated to pay the release price if it seeks a release of a parcel for sale to another.

As mentioned, Debtor is an Arizona joint venture consisting of a number of individuals, and organized under a written agreement. The joint venture was formed for the exclusive purpose of acquiring, developing, and selling the subject property, which continues as its only substantial asset. Significantly, the Patterson Farms' obligation for purchase of the property is non-recourse as to any of the individual joint venturers. In addition, the Patterson Farms' note has been assigned to Western Savings and Loan Association, an institution now under receivership with the Resolution Trust Corporation.

*Status of the Bankruptcy Case and Terms of the Plan.*

When Debtor was unable to pay the Patterson Farms' obligation, and faced foreclosure of the trust deed, it filed for bankruptcy relief on March 1, 1990. On October 4, 1991, Patterson filed his proposed Plan. Debtor filed the sole objection to confirmation of the Patterson Plan. Debtor has also filed a Plan which has not yet come before the Court for confirmation.

Patterson's Plan is essentially simple. It provides that all creditors of Debtor shall be paid in full according to their contracts with Debtor. Debtor shall continue as owner of the property and its other assets. Payment to creditors shall be achieved either by sale of the property, or portions of it, or by appointment of a managing agent who shall pursue collection of amounts needed to pay the claims as additional capital contributions from the joint venturers. Patterson takes the position that all classes of claims are unimpaired, as defined by 11 U.S.C. § 1124, and therefore they are conclusively presumed to have accepted the plan pursuant to 11 U.S.C. § 1126(f). Debtor does not challenge this position.

As indicated, the only objection to confirmation comes from Debtor. It raises three arguments in opposition to confirmation: (1) Patterson lacks standing to file a plan; (2) the plan is not proposed in good faith and is forbidden by applicable law; and (3) the plan and confirmation hearing were not properly noticed to creditors. These contentions are discussed separately below.

*Patterson's Standing to File a Plan.*

Debtor initially argues that Patterson lacks standing to file a proposed reorganization plan because, as of the date of the bankruptcy filing, he was not a creditor of Debtor. This argument lacks merit.

Section 1121(c) of the Bankruptcy Code provides that "[a]ny party in interest, includ-

ing the debtor, the trustee, a creditors' committee, any equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan ..." if the debtor fails to do so within the 120 day "exclusivity" period. Debtor did not file its plan within the 120 day time frame. In the opinion of the Court, Patterson is clearly authorized to file a plan by the statute.

First of all, the list of parties who may file a plan in the provision quoted above is not limiting, but is merely representative. *See* 11 U.S.C. § 102(3). Therefore, even if Patterson occupies a status that is not precisely within any of the listed categories, he may still qualify to file a plan.

■ However, no creative interpretation of the Code is required in order to find Patterson has standing to file a plan. Under the Bankruptcy Code, the concept of who is an interested party is an expandable one. The Court should, on a case-by-case basis, determine whether a party has a sufficient stake in the outcome of a case so as to require its representation. *In re River Bend–Oxford Associates,* 114 B.R. 111 (Bankr.D.Md.1990). As one Court has noted, the notion "is an elastic and broad one designed to give a Court great latitude to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case." *In re Johns–Manville Corp.,* 36 B.R. 743, 754 (Bankr.S.D.N.Y.1984). While these courts were specifically referring to use of the term "party in interest" in Section 1109(b) of the Code, dealing with the right to appear and be heard in Chapter 11 cases, the definition under Section 1121(c) should be the same. 5 L. King, Collier on Bankruptcy, ¶ 1109.02[3] (15th ed. 1991).

In addition, the definition of the term "creditor" as used in the Code is relevant. A creditor for bankruptcy law purposes is an entity that holds a claim against a debtor's estate as of the bankruptcy filing date. 11 U.S.C. § 101(10). The definition of the term "claim" is also intended to be an extremely broad one, encompassing any right to payment or to an equitable remedy as against a debtor or its property, regardless of the status of that claim. 11 U.S.C. § 101(5).

■ Against this backdrop, Patterson is obviously a party in interest without strain to the facts or the law. Patterson is the beneficiary under a deed of trust on Debtor's property, and is directly and contractually interested in Debtor's payment of the Patterson Farms obligation, or in any proposed disposition of the encumbered property. Patterson holds a right to payment, albeit contingent upon Debtor's request for release of a parcel of the property for resale. Because of these factors, and others, Patterson stands to be impacted by events transpiring in Debtor's bankruptcy case. The fact that Debtor technically owed no current payment to Patterson when it filed its petition is without consequence to his status as a creditor, or at least as an interested party.

*Confirmability of the Proposed Plan.*

■ As the plan proponent, Patterson bears the burden of proving his proposed reorganization scheme meets the confirmation standards of the Code even if no objection to confirmation has been raised. *In re Acequia, Inc.,* 787 F.2d 1352, 1358 (9th Cir. 1986). The confirmation standards are found in Section 1129. Recall, Patterson presented no witnesses or evidence in support of confirmation other than the written stipulation and the Court's file in this case. Compliance with confirmation requirements must be based solely on this limited record.

While Debtor makes reference to two separate confirmation standards that allegedly are not met by the proposed plan, the argument advanced is basically the same one. In effect, Debtor argues that because the joint venturers have no legal obligation to contribute additional capital to the venture under either state or bankruptcy law, the means of operation of the proposed plan are forbidden by law as contrary to Section 1129(a)(3). Because capital contributions cannot be coerced, Debtor contends, the plan cannot possibly succeed, and is therefore not feasible, as required by Section 1129(a)(11). Debtor presumes by its arguments that the property will not be sold as a means of satisfying claims. However, Patterson offered no evidence that any sale was imminent, or even

probable, so Debtor's approach is the required one.

At the hearing on confirmation, counsel for Patterson conceded he did not have proof that the members of the joint venture would agree to advance the funds necessary to pay all creditor claims. In the briefing, Patterson reminds the Court that none of the individual joint venturers have objected to confirmation of Patterson's Plan. Failure to object does not, under these facts, equate with affirmative consent to the plan terms, in the view of this Court. Essential, then, to the confirmability of Patterson's Plan is his ability to demonstrate a legal basis to compel the individual members of the joint venture to fund the plan absent their collective consent. Patterson's approach to this issue is discussed below.

*State Law Arguments.*

■ To begin, it should be noted that under Arizona law, a joint venture is a form of partnership. *Waterman v. Rabinovitz,* 161 Ariz. 511, 779 P.2d 826 (Ariz.App.1989); *First State Service v. Hector's Concrete Constr.,* 168 Ariz. 442, 814 P.2d 783, (Ariz. App.1991) (joint venture differs from partnership, if at all, only in scope of business undertaken). Arizona's partnership statutes are based on the Uniform Partnership Act. A.R.S. §§ 29–201 et seq. The rights and obligations of the partners are determined in accordance with the terms of their written agreement. *G & S Investments v. Belman,* 145 Ariz. 258, 267, 700 P.2d 1358, 1367 (Ariz. App.1984). Joint venturers, as partners, are therefore jointly and severally liable for the venture's obligations. A.R.S. § 29–215; *Paragon Bldg. Corp. v. Bankers Trust Co.,* 116 Ariz. 87, 88, 567 P.2d 1216, 1217 (Ariz.App. 1977).

■ Consistent with this analysis, Patterson contends that the general law applicable to partnerships, as well as the terms of the written Joint Venture Agreement, require the individual joint venturers of Debtor to make the required Plan payments, including the payment on the Patterson Farms' note. A review of the document renders such conclusion somewhat suspect, though.

The agreement provides, generally, that "[a]ll Joint Venturers are liable jointly and severally for all debts and obligations of the Joint Venture...." Agreement, ¶ 20.2, at 23. The specific provision of the Agreement discussing capital contributions by the members of the venture, however, states:

All necessary capital in addition to the Initial and Deferred Capital Contributions, when and as required for the furtherance of the purposes of the Joint Venture, shall be furnished by the Joint Venturers in accordance with their Capital Interests (the "Additional Capital Contributions"). The timing and amounts of Additional Capital Contributions shall be determined by agreement of a Majority in Interest of the Joint Venturers. The Joint Venturers agree that such Additional Capital Contributions shall be in amounts sufficient to meet (i) all required payments under that certain Purchase and Sale Agreement [the Patterson Farms obligation] ...; and (ii) all expenses relating to ownership of the Property ...; (iii) all expenses authorized to operate and maintain the Property; and (iv) any other expenses incidental to operation of the business of the Joint Venture....

Agreement, ¶ 5.1(b), at 8–9.

Patterson argues that by agreement among themselves, and under general legal rules applicable to the venture, the venturers of Debtor are obligated to pay the payments due on the Patterson Farms' note, and therefore, a reorganization plan may lawfully propose that Debtor seek to enforce this obligation. The Court does not agree, however, based on the record before it that Patterson's position is without doubt.

First, the Agreement, while specifying that payments on the Patterson Farms' note is clearly a proper purpose to solicit an "Additional Capital Contribution" from the membership, seems to clearly require an affirmative vote by a majority in interest of the venturers as a condition to the obligation to contribute. Such an interpretation would be consistent with the notion that the partners should retain the right to govern the affairs of the partnership. That is, while an additional contribution may be needed to contin-

ue the venture as a going concern, the members should have the option of allowing the business to fail.

Next, Patterson's means of implementing his Plan and interpretation of the Agreement may be at odds with other provisions of the contract. Paragraph 21.6, p. 24, of the Agreement specifically provides that "[n]one of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Joint Venture." Paragraph 10.2, p. 13, allows for appointment of a managing agent, as is envisioned by the Plan. But again, the agent may only be appointed and can only act in accordance with the wishes of the membership.

In essence, then, the members of the venture had a legal right to limit their agreement to make additional contributions of capital to Debtor to instances where a majority in interest of the venturers consented. While some of Debtor's creditors may have the right to pursue individual venturers for obligations regularly incurred by the partnership, Patterson Farms expressly waived that right through the non-recourse nature of its note. Patterson's Plan, however, seeks to coerce capital contributions by standing in the shoes of Debtor, not its creditors, and in that respect, the Court finds inadequate proof in this record that an enforceable obligation to make such contributions exists absent the affirmative consent of a majority in interest of the joint venturers.

*Bankruptcy Law Arguments.*

Debtor contends that Patterson's Plan is a thinly disguised effort to convert the Patterson Farms' note from a non-recourse obligation to a debt for which the individual members of the joint venture are liable. Debtor argues that the Plan violates the law in this regard. Patterson responds by relying on provisions of the Bankruptcy Code to justify his approach to reorganization of Debtor.

█ Patterson points out that Debtor is a fiduciary duty-bound to act for the benefit of its creditors, and is clothed with the broad powers of a trustee. Patterson then cites Section 723(a) of the Code for the proposition that a trustee may pursue general partners

of a partnership debtor to the extent necessary to collect any deficiency in amounts needed to pay partnership claims. Patterson's argument misconstrues the application of the statute.

Section 723(a) provides that:

If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of the deficiency.

Generally, the provisions of Chapter 7 of the Code are not applicable in Chapter 11. 11 U.S.C. § 103(b). A Chapter 11 trustee may be appointed, 11 U.S.C. § 1104(a), and will be empowered to exercise many of the rights of a Chapter 7 trustee. 11 U.S.C. § 1106. However, under Section 1107(a), in the absence of a trustee, a debtor in possession in a Chapter 11 cases is granted several of the rights otherwise available to a trustee. Through this circuitous route, then, a Chapter 11 debtor in possession does possess certain trustee rights and duties.

This Court questions whether through the above set of statutes, however, a partnership debtor in possession has the right or the duty to pursue collection from the partners of the amounts needed to pay the claims against the partnership in all cases. Since Section 723(a) contemplates liquidation of the assets and distribution of assets to creditors, it can be seen that a need to satisfy a "deficiency" on such claims will frequently arise. In Chapter 11, reorganization is the goal, and even when a trustee is appointed it is doubtful that collections from general partners are envisioned absent liquidation of the assets.

Additionally, a Chapter 11 trustee, and therefore the debtor in possession, is granted only certain of the rights of a Chapter 7 trustee enumerated in Section 1106(a). Reviewing the rights bestowed, it is certainly less than clear that assertion of Section 723(a) collection rights against partners is included in the list.

Even were a Section 723(a) claim assertable by the debtor in possession against its

partners, the statute limits recovery to deficiencies on claims "with respect to which a general partner of the partnership is personally liable...." The Patterson Farms' obligation is one on which the joint venturers are not liable, and so it would seem Section 723(a) would be of little assistance as to the major debt of Debtor.

■ Patterson also relies upon Section 1111(b)(1) of the Code. He argues that because of this statute the non-recourse nature of the Patterson Farms' note is simply not relevant in the bankruptcy context, since all secured claims are treated as though they were recourse obligations unless the creditor has elected treatment under Section 1111(b)(2), which Patterson Farms has not. Again, Patterson has read too much into the terms of the statute.

It is true that for purposes of allowance or disallowance of its claim in a Chapter 11 case, Section 1111(b)(1) treats recourse and nonrecourse claims alike. Ambitiously, Patterson would use this statute as a basis to create a new liability in the joint venturers, rather than simply to address treatment of its claims in the administration of the case. As one authority has recognized:

> There has been some concern expressed as to the effect of the conversion of a nonrecourse claim under section 1111(b)(1). One of the areas of concern is whether the conversion of a nonrecourse claim against partnership property creates a recourse claim against the individual partners who, absent the nonrecourse covenant, would be liable for the partnership debt. It is suggested that in adopting section 1111(b)(1), Congress did not intend to enlarge a creditor's rights against parties other than the debtor.

5 L. King, Collier on Bankruptcy, ¶ 1111.-02[2], at 1111–23 (15th ed. 1990). To accept Patterson's position "would be to create a possible windfall for creditors in certain cases upon the filing of a bankruptcy petition, suddenly allowing them to collect from partners personally whereas before filing they could seek repayment only from the partnership itself on their nonrecourse loans." *In re Bryson Properties XVIII*, 129 B.R. 440, 446 (M.D.N.C.1991). *See also,*

Klee, *All' you Ever Wanted to Know About Cramdown Under the New Bankruptcy Code*, 53 Am.Bankr.L.J. 133, 160 (1979). This Court agrees with these cogent observations. Section 1111(b)(1) simply cannot create liability in the partners that was not present pre-bankruptcy.

*Other Considerations.*

Through Patterson's clever arguments, as Debtor suggests, the creditor has made a case for making the members of the joint venture liable for a debt for which the creditor intended they not be responsible. In effect, then, through Chapter 11 Patterson seeks to involuntarily alter the rights and obligations of the parties' contract. While the Bankruptcy Code frequently modifies the contractual expectations of parties expressly, such should not be the result unless clearly provided in the Code. As one bankruptcy court has observed,

> In the interest of public policy and in order to preserve the special nature and character of partnerships, the Court will uphold the sanctity of partnership agreements in the context of restructuring the management of partnerships through the reorganization process under the Bankruptcy Code.

*In re Sovereign Group, 1984–21 Ltd.,* 88 B.R. 325, 329 (Bankr.D.Colo.1988). Policy considerations also therefore dictate that Patterson's methods be rejected.

*Adequacy of Notice.*

■ Debtor contends that the Resolution Trust Corporation ("RTC"), as successor in interest to Western Savings, the holder of the Patterson Farms' note, was not given notice of the plan and confirmation proceedings. Although not disputing that RTC was not noticed, Patterson responds by arguing that the plan and notices were served on all parties listed by Debtor in the official mailing matrix prepared by Debtor, *see* F.R.B.P. 1007(a), and that such notice is adequate under the rules. *See* F.R.B.P. 2002(b)(2), (g).

RTC has evidently neither formally appeared in the case nor filed a proof of claim. However, Patterson is specifically aware of the interest of RTC in the case, and absent

prejudice, the Court should not confirm any plan without adequate notice to such party.

*Conclusion.*

For the reasons set forth above, the Court finds and concludes that:

1. Patterson has standing to file a proposed plan of reorganization in this case pursuant to 11 U.S.C. § 1121(c).

2. Patterson's Plan cannot be confirmed. The Court cannot conclude that the means provided for reorganization in the Plan, namely compelling the individual joint venturers of Debtor to make involuntary capital contributions to pay the claims, are not forbidden by applicable law. 11 U.S.C. § 1129(a)(3). In addition, because of such defect, there is insufficient evidence in the record to show that the payments to creditors in the plan can be made and the Court cannot conclude that the plan is feasible. 11 U.S.C. § 1129(a)(11).

3. Absent giving notice of the contents of the plan and the hearing on confirmation to a known creditor in the case, RTC, the Court will not confirm the plan.

A separate order will be entered denying confirmation of Patterson's plan.