In re **ROOK BROADCASTING OF IDAHO, INC., John H. Rook, and Kootenai Broadcasting, Inc., Debtors.**

**Bankruptcy No. 91–01209–11.**

United States Bankruptcy Court, D. Idaho.

May 7, 1993.

J. Ford Elsaesser, Elsaesser, Jarzabek, Buchanan & Dressel, Sandpoint, ID, for debtors.

Jed W. Manwaring, Evans, Keane, Koontz, & Gibler, Boise, ID, for Stephen R. Harris.

Randall A. Peterman, Elam, Burke & Boyd, Boise, ID, for Lance Intern., Inc.

Stephen F. Faust, Paine, Hamblen, Coffin, Brooke & Miller, Spokane, WA, for Unicom Broadcasting, Inc.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

Two motions are pending in this chapter 11 case. Rook Broadcasting of Idaho, Inc., John H. Rook, and Kootenai Broadcasting, Inc., the procedurally consolidated debtors (hereinafter, "debtors") have moved to defer consideration of the proposed chapter 11 plan submitted by Stephen R. Harris ("Harris"), a creditor of the debtors. Lance International, Inc. ("Lance"), a proposed purchaser of the debtors' assets under the debtors' proposed plan of reorgani-

zation, has also moved for sanctions against Harris.[1]

Debtors base their request for sanctions on the contention Harris violated section 1125(b) of the Bankruptcy Code by mailing copies of his proposed plan and disclosure statement to all or nearly all of the debtors' creditors without court approval. Debtors also allege Harris "bought standing" by purchasing the claims of three creditors, in order to be able to submit his plan to the Court. In his response, Harris challenges Lance's standing to object to his proposed disclosure statement and plan.

## FACTS

This hotly-contested chapter 11 case involves two competing plans of reorganization. On March 4, 1993, debtors filed a proposed plan of reorganization and disclosure statement. This plan provided that the radio station, the primary asset of the debtors, would be sold to Lance. Four days later, Harris filed his proposed plan and disclosure statement. Under Harris' plan, Harris would purchase the radio station himself. In conjunction with this filing, Harris mailed a copy of the proposed disclosure statement to an extensive list of creditors. The proposed disclosure statement is captioned "Creditors' Disclosure Statement." On top of the proposed disclosure statement was a copy of the "Notice of Hearing on Disclosure Statement Filed by a Creditor." The latter document is a court-generated notice. No cover letter was included, and the envelope in which the copies were mailed did not identify the mailing party.[2]

---

1. Lance's motion does not raise any issues not brought forth by the debtors' motion. This opinion will henceforth only refer to the debtors' motion, though the conclusions of the Court are equally applicable to both motions.

2. The affidavit of Theresa Howe, Vice President of First Interstate Bank of Idaho, N.A., attaches as exhibits the documents that the bank received. The envelope in which the documents were mailed is marked with the return address, "417 West Plum Lane/Reno, NV 89509."

3. Section 1121 provides in its pertinent part:

Harris obtained standing to file a plan in this case by purchasing a claim from each of three creditors of the debtors. All three claims were apparently purchased for 100% of their value. Two of these creditors had not filed proofs of claim before the time at which they were transferred to Harris. The third creditor had filed a proof of claim. Harris filed evidence of the third transfer with the Court on April 6, 1993.

## DISCUSSION

### 1. *Harris' Standing to Propose a Plan.*

The debtors first contend Harris lacks standing to file a disclosure statement and plan. Debtors argue that Harris, by purchasing claims and failing to comply with the requirements of Rule 3001 of the F.R.B.P., is therefore not a "party in interest."

Section 1121 provides that any "party in interest" may file a plan under certain circumstances.[3] "Party in interest" is only partially defined in the Bankruptcy Code, as "including ... a creditor." 11 U.S.C. § 1121(c). "Including" is not a limiting term. 11 U.S.C. § 102(3).[4] The term "party in interest" is expandable, and its application must be determined on a case-by-case basis. *In re Chandler Airpark Joint Venture I,* 92 I.B.C.R. 23, 25 (Bankr.D.Idaho 1992) (Pappas, J.).

■ Debtors first contend the action of Harris in purchasing claims postpetition is somehow disqualifying. Trafficking in claims ought to be allowed, however, even though the result is the filing of a competing plan to the debtor's plan.

Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan....
11 U.S.C. § 1121(c).

4. Section 102 provides in its relevant part:
In this title—

\* \* \* \* \* \*

(3) "includes" and "including" are not limiting;

....
11 U.S.C. § 102(3).

Rule 3001(e) of the F.R.B.P., discussed more fully below, deals with the transfer or assignment of claims. By their existence alone, these provisions contemplate that claims against debtors may be transferred. The Advisory Committee Notes to Rule 3001 state subsection (e) was amended "to limit the court's role to the adjudication of disputes regarding transfers of claims.... This rule is not intended either to encourage or discourage postpetition transfers of claims". F.R.B.P. 3001 advisory committee's note (1991 amendment).

Moreover, the term "party in interest" is used elsewhere in the Bankruptcy Code. If a transferee of a claim is considered as not having the standing of a party in interest, a transferee would, among other things, be prevented from: requesting relief from the automatic stay, (11 U.S.C. § 362(d)); filing an objection to a proof of claim, (11 U.S.C. § 502(a)); requesting appointment of a trustee in a chapter 11 case, (11 U.S.C. § 1104(a)); and objecting to confirmation of a chapter 11 plan, (11 U.S.C. § 1128(b)).

At least one other court has held that purchased claims are sufficient to give standing. In *In re First Humanics Corp.*, 124 B.R. 87 (Bankr.W.D.Mo.1991) the court held a party who purchased claims against the debtor postpetition had standing to present a plan of reorganization, even though the sole reason for the purchase of the claims was to insure such standing. 124 B.R. at 91–93.

Debtors also contend Harris' failure to comply with the requirements of Rule 3001(e) should prevent Harris from having standing. Debtors assert the clerk's office has not sent a notice of the transfer, as required by Rule 3001(e). Of the three claims purchased by Harris, two were apparently purchased before a proof of claim was filed. Rule 3001(e)(1) provides such a transfer merely means that only the transferee is permitted to file a proof of claim.[5] There is no evidence Harris failed to comply with this provision.

The debtors present the argument that since section 1111(a) deems a proof of claim was filed for the first two claims[6] these claims should also be considered to fall under the requirements of Rule 3001(e)(2).[7] A major commentator disagrees with this concept. "Although a claim is deemed filed under §§ 1111 and 925, Rule 3001(e)(1) and (3) refer to the actual filing of a proof of claim by the creditor." 8 Lawrence P. King, *Collier on Bankruptcy* ¶ 3001.04[2], at 3001–22 n. 12 (15th ed.1993).

With regard to the third claim, the Court notes the record contains a "Notice of Transfer of Claim" from McIntosh Roofing, Inc. to Harris, filed April 6, 1993. While it appears from the record the clerk's office may not have mailed out the notice to the transferor required by Rule 3001(e)(2), the rule does not place that burden upon the transferee. It would be inequitable to deprive Harris of standing because of events beyond his control.

**5.** Rule 3001(e) provides in part:
  (1) Transfer of Claim Other Than for Security Before Proof Filed. If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.
  F.R.B.P. 3001(e)(1).

**6.** Section 1111(a) provides:
  A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.
  11 U.S.C. § 1111(a).

**7.** Subsection (e)(2) of Rule 3001 provides:
  Transfer of Claim Other Than for Security After Proof Filed. If a claim other than one based on a publicly traded note, bond, or

debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.
F.R.B.P. 3001(e)(2).

The filing of the notice of transfer on April 6 came nearly one month after Harris filed his proposed plan and disclosure statement. While Harris may not have been in compliance with Rule 3001(e) at the time the proposed plan and disclosure statement were filed, there is authority to suggest this does not deprive a transferee of standing as a party in interest. *See Sullivan Central Plaza I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Central Plaza I, Ltd.)*, 935 F.2d 723, 726–27 (5th Cir.1991) (failure to comply with Rule 3001 did not deny holder of mortgage and note of standing as party in interest to move to convert chapter 11 case to chapter 7).

The basic issue is whether Harris should be considered a party in interest. Harris is a creditor of all three of the debtors. He has complied with Rule 3001(e) with regard to at least two of the three debtors. Harris is thus a party in interest with regard to at least two of the three debtors in these chapter 11 cases. Harris has made an attempt to comply with Rule 3001(e), and there is authority to suggest noncompliance does not deprive a party of standing. Moreover, it may be in the interest of creditors to be presented with two competing plans of reorganization. In light of all of these considerations, and the expansive nature of the term "party in interest," the Court holds Harris has standing to propose a plan under section 1121.

### 2. *Standing of Lance to Object to Harris' Disclosure Statement.*

■ In order to have standing to object to Harris' proposed disclosure statement, Lance must have standing as a party in interest under section 1109.[8] Lance's only interest in this case is as the proposed purchaser of the radio station under the debtors' proposed plan.

At least two cases have considered whether an interested buyer of assets in a chapter 11 case has standing to contest matters occurring within the case. In *In re Crescent Manufacturing Co.*, 122 B.R. 979 (Bankr.N.D.Ohio 1990), the debtor filed a motion to extend the time during which the debtor alone could seek to obtain acceptance of its plan. A prospective purchaser of the debtor's assets objected to the motion. After noting that whether a party is a party in interest is determined on a case-by-case basis, the court stated:

> Scarborough is not a creditor of this estate; it is an interested purchaser of Debtor's assets or business. As such, Scarborough will not be affected by the reorganization. While it may increase the res available for distribution to creditors, it will not benefit from this estate. [Citations omitted.] Furthermore, the court is wary to permit the interjection of peripheral parties that may thwart the goal of a speedy and efficient reorganization. [Citation omitted.] Because Scarborough represents only a perspective [sic; prospective] purchaser, the court, as opined at the hearing, finds that it is without standing to object to the instant motions.

122 B.R. at 981. The court in *In re Karpe*, 84 B.R. 926 (Bankr.M.D.Pa.1988), reached a similar conclusion, finding a prospective purchaser of property did not have standing to present a "Motion for Hearing on a Higher Bid" with respect to the sale of the property to another purchaser.

Lance has no interest in the bankruptcy estate, other than its desire to purchase estate assets. No interest of Lance is affected by the results of the debtors' bankruptcy, other than incidentally. The holding of *Crescent Manufacturing* is applicable here, and Lance does not have standing to object to Harris' proposed disclosure statement or plan.

### 3. *Harris Improperly Disseminated the Disclosure Statement.*

The crux of this issue turns upon the interpretation of section 1125(b) of the

---

**8.** Section 1109 provides in part:

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).

Bankruptcy Code. Dealing with the acceptance or rejection of a chapter 11 plan by the creditors, that section provides in its relevant part:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

11 U.S.C. § 1125(b). "Adequate information" required of a disclosure statement is

> information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan; ....

11 U.S.C. § 1125(a)(1).

There is little case law dealing with the extent to which a party may disseminate information to creditors of a chapter 11 debtor outside of the court-approved disclosure statement. What little case law that does exist reaches differing conclusions. For example, in *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94 (3d Cir.1988), after the debtor's disclosure statement and plan had been distributed to creditors for balloting, a creditor disseminated a draft plan to several other creditors for discussion purposes. The Third Circuit held section 1125(b) establishes a floor on information the creditors may receive, and not a ceiling. 860 F.2d at 100. The court could find no principled distinction between negotiations between creditors and solicitation of future acceptance of another plan, and therefore held the term "solicit" in section 1125(b) should be interpreted narrowly, to mean only a " 'specific

request for an official vote.' " 860 F.2d at 101. *See also In re Snyder*, 51 B.R. 432, 437 (Bankr.D.Utah 1985).

Other courts have qualified this essentially unrestricted view of communications. A summary of later case law is found in *In re Apex Oil Co.*, 111 B.R. 245, 246–49 (Bankr.E.D.Mo.1990). While the court did not require all creditor communications to be filtered through the bankruptcy court, a creditor made such communications at its peril. 111 B.R. at 249.

> [A]ssuming that the debtor's exclusivity period has expired, soliciting parties need not obtain prior court approval of solicited materials *only if*:
>
> (1) the information provided is truthful and absent of any false or misleading statements or legal or factual mischaracterizations;
>
> (2) the information is presented in good faith;
>
> (3) the soliciting party does not propose or suggest an alternative plan which has yet to gain court approval or otherwise failed to travel through the appropriate legal channels, as dictated by the Bankruptcy Code.

111 B.R. at 249 (emphasis in original). *See also In re Temple Retirement Community, Inc.*, 80 B.R. 367 (Bankr.W.D.Tex.1987) (holding that letter from indenture trustee to bondholders suggesting that another plan was waiting in the wings if the debtor's plan was rejected would violate section 1125(b)).

■ The process of approving a disclosure statement is governed by Rule 3017 of the F.R.B.P., which states in its relevant part:

> The plan and the disclosure statement shall be mailed with the notice of the hearing *only* to the debtor, any trustee or committee appointed under the Code, the Securities and Exchange Commission and any party in interest *who requests in writing a copy of the statement or plan.*

F.R.B.P. 3017(a) (emphasis added). Whatever the competing considerations involved in other circumstances, the mailing of copies of an unapproved disclosure state-

ment to creditors is expressly forbidden unless the creditor has requested such a copy in writing.

■■■ A proposed disclosure statement is a public document, and is available on request to any creditor. However, the purpose of the disclosure statement is to give all of the creditors a source of information such that they may make an informed choice regarding approval or rejection of the plan. 11 U.S.C. § 1125(a), (b). Until such a disclosure statement is approved by the court and distributed to the creditors, there can be no solicitation of an acceptance or a rejection of the plan. 11 U.S.C. § 1125(b).

The Bankruptcy Code's requirement of court approval of a disclosure statement, combined with Rule 3017's restrictions on dissemination of an unapproved disclosure statement, clearly contemplates some creditors need to be protected against misinformation. Creditors who are not knowledgeable or informed with regard to the debtors' affairs will not be presented with information regarding the debtors and the proposed plan until the court has determined the disclosure statement contains information adequate for the creditor to make an informed choice. Creditors who are knowledgeable with regard to the debtor and its affairs presumably will not be misled by the disclosure statement because of their own independent sources of information. It is these informed creditors who are interested in obtaining copies of proposed disclosure statements, and who, through the process of objection, will shape the final disclosure statement for the benefit of those creditors who do not have such information.

Permitting a plan proponent to distribute proposed disclosure statements taints the voting process. Those creditors who are ignorant of the debtor and its affairs, the ones for whose protection section 1125 requires court approval of the disclosure statement, would instead be presented with numerous documents containing inconsistencies, omissions, and misleading or incorrect statements. The debtors and the Court would be forced to attempt to "chase down" these problems, with little real hope of undoing the damage.

■■■ Harris' violation here provides a perfect illustration of the dangers involved in unrestricted distribution of an unapproved disclosure statement. At the hearing on this matter Harris' proposed disclosure statement was denied approval. Yet the disclosure statement was captioned as though it was court-approved, and accompanied with a notice generated by the court in an envelope that did not identify the sender. John Rook claims he received numerous phone calls from creditors inquiring whether the radio station had been sold to Harris. Such confusion and misunderstanding could have been avoided had Harris complied with the clear language of Rule 3017.

It is therefore concluded Harris' actions were in violation of section 1125(b) and Rule 3017. The Court does not find the remedy proposed by the debtors to be appropriate, however. It is in the interest of the creditors that they have a choice between competing plans. Nonetheless, the Court feels sanctions are appropriate. Accordingly, Harris shall pay one-half of the attorney's fees and costs expended by the debtors in prosecuting its motion to delay consideration of the Harris plan.

Counsel for the debtors may file a motion for costs and attorney's fees within ten (10) days and Harris shall have ten (10) days to object and notice the objection for hearing.

In summation, then:

1. Harris is determined to have standing to present a proposed disclosure statement and plan in this bankruptcy;

2. Lance is determined not to have standing to object to Harris' proposed disclosure statement and plan; and

3. Harris improperly distributed copies of his proposed disclosure statement to creditors, and as an appropriate sanction, will be ordered to pay one-half the debtors' costs and attorney's fees incurred in prosecuting these motions.

A separate order will be entered.