**In re Daniel B. ZALEHA, Debtor.**

**Bankruptcy No. 93–00638.**

United States Bankruptcy Court,
D. Idaho.

Nov. 29, 1993.

Bob E. Pangburn, Caldwell, ID, for debtor.

Michael L. Schindele, Boise, ID, for First Sec.

Jeffrey M. Wilson, Wilson, Carnahan & McColl, Boise, ID, for Toyota Motor Credit Corp.

Joseph M. Meier, Cosho, Humphrey, Greener & Welsh, Boise, ID, for Rosholt Robertson.

Jeffrey G. Howe, Asst. U.S. Trustee, Boise, ID.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

Daniel Zaleha ("debtor") is the debtor in this chapter 11 bankruptcy. Two basic matters are before the Court. First is confirmation of the debtor's proposed chapter 11 plan. Two creditors of the debtor, Rosholt, Robertson & Tucker ("Rosholt Robertson") and Toyota Motor Credit Corporation ("TMCC"), both oppose confirmation. Debtor disputes the objections of both Rosholt Robertson and TMCC. Debtor also challenges Rosholt Robertson's standing to object to confirmation. Debtor additionally moves to subordinate Rosholt Robertson's claim, and for sanctions against Rosholt Robertson for bad faith.

The second issue before the Court is the debtor's motion for a stay pending appeal of the Court's decision of August 31, 1993. That decision concluded the debtor's contract for an automobile through the TMCC was a true lease, not a sale contract, and the debtor was required to assume or reject the lease under 11 U.S.C. § 365. TMCC opposes any stay.

## FACTS

The debtor is an attorney, formerly employed by Rosholt Robertson. A significant dispute arose between the debtor and Rosholt Robertson in the fall of 1992, as a result of which the debtor was fired. The debtor alleges he was unlawfully terminated as a result of his religious beliefs, and lists in his schedules numerous potential causes of action.[1] Rosholt Robertson has appealed a decision awarding the debtor unemployment compensation. On August 10, 1993, the debtor filed a complaint with the Idaho Human Rights Commission for religious discrimination.

In 1992, while still employed at Rosholt Robertson, the debtor became indebted to Bruce Smith ("Smith"), a partner with the firm, in the amount of $300.00 for an office couch. Debtor filed this chapter 11 petition in March, 1993; Smith was listed in the debtor's schedules as an unsecured creditor. The debtor's disclosure statement and first proposed plan were filed May 21, 1993, and this Court subsequently approved distribution of the disclosure statement and proposed plan to creditors. Rosholt Robertson filed an objection to the debtor's proposed plan on September 3, 1993, the last day to file an objection and less than three weeks after Rosholt Robertson was served with the debt-

or's complaint before the Idaho Human Rights Commission.

Rosholt Robertson bases its appearance in this case on its status as the assignee of Smith's $300 claim. Rosholt Robertson did not vote on the debtor's plan, nor did it file a notice of a transfer of claim under Rule 3001(e)(2). Other than the objection to confirmation itself, there is nothing in the file to confirm that Rosholt Robertson has actually been assigned Smith's claim.

The debtor filed a first amended plan on September 10, 1993. The amended plan deals in part with the result of this Court's decision of August 31, 1993. In that decision, the Court granted TMCC's motion to require debtor to assume or reject his lease of an automobile. Debtor proposes to pay TMCC the amount due monthly under the automobile lease, without curing any default. In the event debtor's appeal is successful, the debtor's contract would be modified to a sale agreement, as set forth in the debtor's original chapter 11 plan.[2] The payments made during the pendency of the appeal would be applied to the modified contract balance, and TMCC would be required to refund any overpayment. If the appeal is unsuccessful, debtor will assume or reject the lease as required by section 365. If the appeal runs longer than the remaining term of the lease, debtor will continue to make payments, such payments to be first applied to the current arrearage (approximately $819), then to the price of the lease's option to purchase. TMCC objects to being locked into a plan in which its rights are contingent on the debtor's success on appeal.

Debtor also moves that the August 31, 1993 decision be stayed pending the determi-

1. The debtor's schedules list the following claims against Rosholt Robertson:
   "(1) breach of contract and of the covenant of good faith and fair dealing, (2) tortious wrongful discharge, (3) religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–2, (4) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3) [sic], (5) intentional and/or negligent infliction of emotional distress, and (6) abuse of process."
   Debtor's Amended Schedule B p.1, item 20 (filed September 22, 1993). Debtor also alleges four

causes of action against four partners of Rosholt Robertson individually. *Id.*

2. The debtor's original chapter 11 plan proposed substituting a sale agreement for the previous agreement between TMCC and the debtor, with an outstanding balance of $12,000.00 and interest on the financed balance at 10 percent. The first amended plan altered the terms of the proposed sale agreement to have an outstanding balance to $10,300.00, and accrue interest at 9 percent.

nation of the appeal. TMCC opposes the stay.

## 1. STANDING OF ROSHOLT ROBERT-SON TO OBJECT TO PLAN.

■ Debtor's challenge to the standing of Rosholt Robertson is moot with regard to confirmation. Rosholt Robertson's objection is that the debtor's proposed plan does not meet the "best interest of creditors" test of section 1129(a)(7). "Regardless of whether a valid objection to confirmation has been asserted, the Code imposes upon the Court a mandatory duty to determine whether a plan meets all the requirements for confirmation delineated in § 1129(a) of the Code." *In re Future Energy Corp.*, 83 B.R. 470, 481 (Bankr.S.D.Ohio 1988). *See In re Mid Pacific Airlines, Inc.*, 110 B.R. 489, 490 (Bankr.D.Hawaii 1990) (same); 11 U.S.C. § 1129(a) ("The court shall confirm a plan *only if all* of the following requirements are met") (emphasis added). The plan proponent bears the burden of proving that the requirements of section 1129(a) have been met. *Mid Pacific Airlines, supra*, 110 B.R. at 490 (plan proponent bears burden of showing that every requirement of section 1129(a) has been met); *Future Energy, supra*, 83 B.R. at 481 (same); *In re Martin*, 66 B.R. 921, 925 (Bankr.D.Mont.1986) (burden to show compliance with sections 1129(a) and (b) is on proponent).

Even if Rosholt Robertson lacked standing, the Court would have to examine the grounds of the objection to determine whether the debtor's proposed plan should be confirmed. Decision of the standing issue is therefore not strictly necessary for this Court to resolve the question of confirmation. However, because the issue of Rosholt Rob-

ertson's standing is likely to arise again in this case, and because fairly frequent questions arise regarding (1) the trading of claims in bankruptcy, and (2) the effect of a failure to comply with Rule 3001(e)(2) on a party's ability to assert standing as a party in interest, the standing issue will be addressed.

Section 1128(b) limits standing to object to a proposed chapter 11 plan to "part[ies] in interest." [3] The term "party in interest" is not defined in the Bankruptcy Code, although both section 1109(b) and section 1121(c) provide partial definitions. 11 U.S.C. § 1109(b) (standing to appear); 11 U.S.C. § 1121(c) (standing to file a plan); *see In re Rook Broadcasting of Idaho, Inc.*, 154 B.R. 970, 972 (Bankr.D.Idaho 1993). The term "party in interest" includes "a creditor." 11 U.S.C. §§ 1109(b), 1121(c). This district has indicated on several occasions that the term "party in interest" is expandable, and is evaluated on a case-by-case basis. *Rook, supra*, 154 B.R. at 972; *In re Chandler Airpark Joint Venture I*, 92 I.B.C.R. 23, 25, 163 B.R. 566 (Bankr.D.Idaho 1992) (Pappas, J.).

■ There is no per se rule denying "party in interest" status to the purchaser of a claim against a bankrupt. *See Rook, supra*, 154 B.R. at 972–73; *In re First Humanics Corp.*, 124 B.R. 87 (Bankr.W.D.Mo.1991). Debtor objects to granting this claim "party in interest" status, however, on the grounds that Rosholt Robertson failed to comply with Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure. This rule requires a party to give notice to the Court if the party is transferred a claim after a proof of claim has already been filed.[4] Debtor asserts Rule 3001(e)(2) applies because Smith was listed in the debtor's schedules as a creditor, and a proof of claim is therefore deemed filed un-

3. Section 1128 provides "A party in interest may object to confirmation of a plan." 11 U.S.C. § 1128(b).

4. Rule 3001(e)(2) provides:
*Transfer of Claim Other Than for Security After Proof Filed.* If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of

the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.
F.R.B.P. 3001(e)(2).

der section 1111(a).[5] Rosholt Robertson argues the debtor does not have standing to assert failure to comply with Rule 3001(e)(2).[6] Rosholt Robertson also contends the only reason it has not complied with the rule is that it did not have sufficient time to do so before the confirmation hearing.

■ It has previously been suggested that a party's failure to comply with Rule 3001(e)(2) does not necessarily deprive the party of standing as a "party in interest." *See Rook, supra,* 154 B.R. at 974; *Sullivan Central Plaza I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Central Plaza I, Ltd.),* 935 F.2d 723, 727 (5th Cir. 1991). The Court now expressly holds that failure to comply with Rule 3001(e)(2) does not, without more, deprive a party of standing as a party in interest.

■ As already discussed, the term "party in interest" includes "creditors;" it therefore includes parties holding contingent, unliquidated, disputed claims. *See* 11 U.S.C. § 101(10)(A) ("creditor" is an entity with a "claim"); 11 U.S.C. § 101(5)(A) ("claim" includes rights to payment that are unliquidated, contingent, and disputed). A properly filed proof of claim is prima facie valid unless and until there is an objection. 11 U.S.C. § 502(a); F.R.B.P. 3001(f). Despite the fact the claim may be subject to a good faith dispute regarding its very existence, such a claim need not be determined or allowed before the party will have standing as a "party in interest."

■ In the case of a contingent, unliquidated, disputed claim, it is the obligation itself that is disputed. In the case of a transfer after a proof of claim is filed, there may be no dispute regarding the validity of the debt; the only dispute may be whether the alleged transferee does in fact have title to the claim. Such is the case here, where debtor contests only Rosholt Robertson's title to a concededly valid obligation. There is no reason to distinguish between a contingency or dispute based on whether a party's claim is valid, and a contingency or dispute based on whether one party or another holds the claim. If the holder of a contingent, disputed, unliquidated claim is entitled to standing as a party in interest, so is the holder of a claim whose interest is contingent or disputed because of an alleged postpetition transfer.

■ Moreover, if the proper notice is given, the transfer is treated as prima facie valid. The only obstacle to the transferee obtaining this status is the filing of proper notice with the court.[7] This is comparable to the prima facie validity given to proofs of claim.

---

5. In *Rook*, this Court suggested Rule 3001(e)(2) required that an actual proof of claim be filed before the rule was triggered. 154 B.R. at 973. Rule 3001(e)(2)'s restriction to transfers "after a proof of claim is filed" is better interpreted to include a proof of claim deemed filed under section 1111(a). Subsections (1) and (2) of Rule 3001(e) are focused on ensuring that a single creditor is listed in the Court records as holder of a claim, and therefore entitled to receive bankruptcy notices and a distribution, if any, from the estate. The discrepancy in the Court record that appears if a creditor has been listed in the debtor's schedules is no different from the discrepancy that would appear if the creditor filed an actual proof of claim. Regardless of whether an actual proof of claim was filed before the alleged transferee appeared, or because the debtor's schedules listed the debt initially, Rule 3001(e)(2) requires the proper claimant be determined and the ambiguity resolved.

6. For the purposes of this motion, I assume without deciding that the debtor has standing to object to Rosholt Robertson's failure to comply with Rule 3001(e)(2).

7. If a transferee obtains a claim before the transferor files a proof of claim, only the transferee may file a proof of claim. F.R.B.P. 3001(e)(1). If the transferee obtains the claim after the transferor files a proof of claim, the transferee is entitled to be substituted for the transferor upon compliance with Rule 3001(e)(2). Only the objection of the transferee within 20 days will stay such substitution, and then only until a hearing may be held to determine who actually owns the claim. In other words, the transferee's mere assertion that it properly holds title to the claim is entitled to substantial weight; it is virtually conclusive where no proof of claim has been filed, and is at least prima facie valid pending objection where a proof of claim has been filed. An alleged transferee therefore has at least a contingent, disputed claim against the debtor, such claim being contingent on compliance with Rule 3001(e)(2), and disputed only if the alleged transferor objects.

■ There is also the nature of Rule 3001(e)(2) itself. The purpose of clearing the court record of ambiguities regarding who actually holds a claim is to establish who will be entitled to notice regarding the case, and distribution (if any) from the estate. This in no way affects the potential interest a party may have in the case, however. Appearances in bankruptcy cases are not limited to those creditors who file a proof of claim or are listed in the debtor's schedules. It is the existence of an interest potentially affected by the matter before the Court that determines standing. *See Chandler Airpark, supra,* 92 I.B.C.R. at 25, 163 B.R. at 569 (evaluating "party in interest" requires "determin[ing] whether a party has a sufficient stake in the outcome of a case so as to require its representation").

In light of these considerations, as well as the fact Rosholt Robertson's failure to comply with Rule 3001(e)(2) prior to the hearing was a result of time pressure only, I conclude Rosholt Robertson has standing as a "party in interest."

■ Debtor contends Rosholt Robertson should be denied standing as a party in interest because of inequitable conduct. Debtor relies on the case of *In re Keyworth,* 47 B.R. 966 (D.Colo.1985). In that case, the court held the transferee of a claim would be denied standing as a party in interest because the transferee was a defendant in a state court lawsuit filed by the debtor, and the claim had been purchased for no reason other than to harass the debtor or obtain an advantage in the state court litigation. 47 B.R. at 971–72.

I decline to impose such a sanction here. The court in *Keyworth* relied upon the nature of the bankruptcy court as a court of equity, and concluded the actions of the defendant/transferee created a threat to the integrity of the judicial system that exceeded the interest in the spirit and intent of the Bankruptcy Code. 47 B.R. at 971. There is insufficient evidence of inequitable conduct to

justify such sanctions here. I have already noted that the grounds for Rosholt Robertson's objection would have to be examined by this Court even if no objection had been made. The fact Rosholt Robertson objected has not placed on the debtor any greater burden than he would have faced if no objection had been made. Whether or not it has standing, Rosholt Robertson merely explicitly presented to the Court a matter the Court would consider regardless. Moreover, the issue presented by Rosholt Robertson's objection is colorable, not frivolous. There is no reason to penalize a creditor who has standing under the Bankruptcy Code for bringing to the Court's attention a colorable issue the debtor would face in any event. I also note that Rosholt Robertson did not vote its claim in order to avoid the appearance of trying to derail the debtor's bankruptcy. For these reasons, the debtor's motion for sanctions will also be denied.

■ Debtor's motion to subordinate Rosholt Robertson's claim under 11 U.S.C. § 510 is also denied. There is insufficient evidence to suggest Rosholt Robertson acted so inequitably that its claim should be penalized in favor of other creditors. *See* 11 U.S.C. § 510(c)(1). In fact, the opposite is the case; Rosholt Robertson objects to the plan for failing to provide for certain assets to be distributed to the creditors, so unsecured creditors may be benefitted, not harmed, by Rosholt Robertson's action.

## 2. OBJECTION OF ROSHOLT ROBERTSON.

■ Rosholt Robertson objected to the debtor's proposed plan for failure to comply with the "best interests of creditors" test of 11 U.S.C. § 1129(a)(7)(A). This section provides a plan cannot be confirmed where an impaired class has not accepted the plan, and the class will receive less under the plan than it would receive in a chapter 7 liquidation.[8]

---

8. Section 1129 provides in part:

(a) The court shall confirm a plan only if all of the following requirements are met:

    \*    \*    \*    \*    \*    \*

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

  (i) has accepted the plan; or

  (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder

The claim assigned by Smith to Rosholt Robertson is a Class 9 claim (unsecured consumer claim) under the debtor's proposed plan. Class 9 is an impaired class that did not accept the plan; only 64.35% of the total amount of claims owing voted to accept the plan, where 66.67% is required for acceptance.[9] The essence of Rosholt Robertson's objection is that debtor has not valued his cause of action against Rosholt Robertson for unlawful discrimination, nor has the debtor provided for the proceeds of that lawsuit to be distributed to creditors in the event of a recovery. As a result, Rosholt Robertson contends Class 9 creditors will not receive more than they would in a chapter 7 liquidation, in violation of section 1129(a)(7)(A)(ii).

■ The debtor listed his potential cause of action against Rosholt Robertson in both his schedules and his disclosure statement. The cause of action has not been valued, and the debtor has not claimed an exemption for any proceeds. Because it arose prepetition, the potential cause of action against Rosholt Robertson is property of the estate. *See Sierra Switchboard Co. v. Westinghouse Electric Corp.,* 789 F.2d 705, 707–09 (9th Cir.1986) (cause of action for emotional distress was property of the estate). There is no provision for distribution of any of the net recovery from this claim to creditors.[10]

I have already noted that the debtor bears the burden of showing compliance with every requirement of section 1129(a). More specifically, it has been held that a plan proponent bears the burden of proving a proposed plan meets the "best interest of creditors" test of section 1129(a)(7)(A)(ii). *Future Energy, supra,* 83 B.R. at 489. A hypothetical chapter 7 liquidation in this case would give unsecured creditors a pro rata distribution of the net proceeds of any judgment against Rosholt Robertson. In the debtor's proposed chapter 11 plan, creditors will at best receive only a fixed dollar amount of any such recovery. On these facts, it is impossible to determine whether creditors will receive more under the plan than they would receive in a chapter 7 liquidation. In fact, there is substantial reason to believe creditors will receive less than in a hypothetical chapter 7 liquidation. The debtor has not met his burden of proof, and the plan cannot be confirmed. *In re Rusty Jones, Inc.,* 110 B.R. 362, 373–74 (Bankr.N.D.Ill.1990) (plan provision to give creditors only 80% of any recovery on cause of action, when creditors would receive 100% in chapter 7, violated "best interests of creditors" test). *Cf. Future Energy, supra,* 83 B.R. at 489 n. 33 (in assessing a hypothetical chapter 7 liquidation, the court must value possible recoveries in future actions to avoid preferences or fraudulent transfers).[11]

### 3. OBJECTION OF TMCC.

■ The validity of debtor's treatment of TMCC is also at issue. TMCC objects to the manner in which debtor treats its claim by making its treatment contingent on the debtor's success in appealing this Court's decision of August 31, 1993. As already mentioned, that decision held the agreement between TMCC and the debtor was a lease of an automobile, and not a disguised sale.

---

would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; . . . .
11 U.S.C. § 1129(a)(7)(A)(i), (ii).

9. *See* 11 U.S.C. § 1126(c).

10. The debtor's plan contains a number of provisions for payment to a creditor or creditors if the debtor's income exceeds a certain monthly or yearly level. However, the payments to be made under these circumstances are set dollar figures. As a result, a judgment in favor of the debtor, regardless of the amount, would only be distributed to the extent of those set amounts.

11. Debtor contends it is "unlikely" a trustee would prosecute this suit in a chapter 7, because of the expense of litigation and the differing factual assertions. There is no evidence to support this conclusion. In the absence of any estimation of value, it is hardly obvious a trustee is "unlikely" to bring suit. Numerous alternatives are available that would permit the trustee to obtain a recovery on a disputed claim, even in the face of substantial opposition. The trustee could retain counsel on a contingent fee basis to handle the suit, for example. *Cf. Rusty, Jones, supra,* 110 B.R. at 368 (cause of action allegedly worth $10 million was being prosecuted by counsel on a contingent fee basis). Alternatively, the trustee might settle the action with Rosholt Robertson at a figure that includes consideration of such factors as expense and likelihood of victory.

■ There is no reason to deny confirmation of a plan because it provides for contingent treatment of a creditor, so long as all contingencies are provided for and no single contingency, if triggered, violates the requirements of a confirmed plan. If the debtor in this case prevails on the appeal of the lease decision some provision will have to be made regarding how completed plan payments will be applied. The proposed plan requires that TMCC receive lease payments as though no appeal had been made and the debtor acquiesced in the Court's decision. TMCC has not alleged, nor has this Court discovered, that any of the possible contingencies would cause TMCC's treatment under the plan to violate section 1129. Since none of the contingencies are invalid, and since TMCC's rights as a result of the Court's decision are adequately protected by the plan, this provision does not prevent confirmation.

■ This Court also notes the plan cannot be confirmed for another reason not presented by any of the parties. As previously mentioned, Class 9 is an impaired class. Only 64.35% in amount of Class 9 claims were voted to accept the plan, where ⅔ of the amount (66.67%) is required for acceptance. 11 U.S.C. § 1126(c).[12] The plan therefore does not meet the requirements of section 1129(a)(8) because an impaired class has not accepted the plan. The debtor has not

shown the plan complies with section 1129(b), which is the only means by which a plan can be confirmed despite noncompliance with section 1129(a)(8). In fact, the plan fails the "absolute priority rule" of section 1129(b)(2)(B)(ii), because the debtor would retain property under the plan when his interest is junior to that of Class 9 creditors.[13]

### 4. MOTION TO STAY AUGUST 31, 1993 DECISION PENDING APPEAL.

■ Debtor has asked the Court to stay the decision of August 31, 1993, pending appeal. Debtor alleges that TMCC is adequately protected during the pendency of the appeal by the provisions of his proposed plan.

Rule 8005 of the Federal Rules of Bankruptcy Procedure permits a bankruptcy court to grant a stay pending appeal.[14] That rule must also be read in conjunction with Rule 7062. 9 Lawrence P. King, *Collier on Bankruptcy* ¶ 8005.03, at 8005–4 (15th ed. 1993). Rule 7062 is also applicable to contested matters such as the one appealed from here. F.R.B.P. 9014.

■ In general, courts decide whether to issue a stay pending appeal based on a standard similar to that used to decide whether to grant a preliminary injunction. *Schrader v. Idaho Dep't of Health and Welfare*, 590 F.Supp. 554, 560 (D.Idaho 1984), *reversed on*

---

12. Section 1126(c) provides in part:

A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.
11 U.S.C. § 1126(c).

13. Section 1129(b) provides in part:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

\*  \*  \*  \*  \*  \*

(B) With respect to a class of unsecured claims—
(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of

the effective date of the plan, equal to the allowed amount of such claim; or
(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.
11 U.S.C. § 1129(b)(2)(B).

14. Rule 8005 provides:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest....
F.R.B.P. 8005.

*other grounds,* 768 F.2d 1107 (9th Cir.1985). As this district has stated:

> In this circuit there are two interrelated legal tests for the issuance of a preliminary injunction. The tests are not separate, but rather represent the outer reaches of a single continuum.... At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor. The relative hardship to the parties is a critical element in deciding at which point along the continuum a stay is justified.

*Schrader, supra,* 590 F.Supp. at 560 (citation omitted).

The Court does not believe the debtor has a probability of success on the merits. However, review of the record indicates serious legal questions are raised in the debtor's appeal.

Additionally, the balance of hardships tips sharply in the debtor's favor, given the treatment proposed by the debtor for the duration of the stay. TMCC faces little burden from the stay. The debtor will provide TMCC with lease payments as if the decision had not been stayed and the debtor had assumed the lease. In fact, with the exception of curing the $819 default, TMCC is treated exactly as though no stay had been granted.

Conversely, the debtor may face a substantial burden if the stay is not granted. Requiring the debtor to assume or reject the lease at this point could force the debtor to reject it. Even if the debtor prevailed on appeal, he would not be able to complete his purchase the vehicle, which is one of the debtor's goals in bankruptcy. In other words, if the action is not stayed, debtor may be deprived of any remedy even if he succeeds on appeal.

The debtor requests a stay through the completion of an appeal to the U.S. Court of Appeals for the Ninth Circuit. In the absence of the protections proposed by the debtor in his first amended plan of reorganization, such a lengthy period of time could cause substantial harm to TMCC. TMCC would be deprived of the benefit of lease payments, while at the same time the value of the leased property would continue to depreciate. However, as discussed above, the debtor's first amended plan cannot be confirmed, and thus the provisions of the first amended plan are not made binding on the debtor through the confirmation process.

This Court is empowered to "make any ... appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." F.R.B.P. 8005. "Thus, the bankruptcy judge is given broad powers to stay its own orders and judgments pending appeal." 9 *Collier on Bankruptcy* ¶ 7062.07, at 7062–9.

The stay pending appeal will be granted. Because no plan has been confirmed, however, the continuation of this stay will be conditioned on TMCC receiving the treatment proposed in the debtor's first amended plan. *See Hadley v. Victory Construction Co., Inc. (In re Victory Construction Co., Inc.),* 9 B.R. 570, (Bankr.C.D.Cal.1981) (finding a stay pending appeal analogous to the automatic stay, the court granted a stay pending appeal conditioned on the debtor's payment of adequate protection), *vacated on other grounds,* 37 B.R. 222 (9th Cir. B.A.P. 1984). Specifically, with the exception of curing the existing $819 default, the debtor will be and remain subject to all of the terms and conditions of the original lease agreement with TMCC as though he had assumed the lease under section 365. The Court will retain jurisdiction over this stay during the appeals process; in the event of a material default on these conditions, TMCC shall be entitled to seek relief from stay.[15] Upon conclusion of the appeals process, payments received during the pendency of the appeal will be ap-

---

15. The Court renders no opinion regarding whether the debtor would remain entitled to a stay in the event of default. Numerous circumstances would impact on such a determination, including the status of the appeal, the estimated remaining amount of time for completion of the appeals process, the nature and extent of the default, the debtor's ability to provide additional security, etc.

plied as set forth in the debtor's first amended plan. On the facts of this case, these conditions represent a fair compromise between the competing interests of the debtor and TMCC.

A separate order will be entered.