# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 15, 2025

Bruce E. Jameson, Esquire
Prickett, Jones & Elliott, P.A.
1310 North King Street
Wilmington, Delaware 19801

Thomas W. Briggs Jr., Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, Suite 1600
Wilmington, DE 19801

RE: *SPCP Group, LLC v. Svalbard Holdings Limited, et al.,*
Civil Action No. 2024-0576-MTZ

Dear Counsel,

This action concerns a customer claim subject to a pending bankruptcy with the United States Bankruptcy Court for the District of Delaware. The plaintiff alleges it entered into a contract to purchase the claim, but that the seller wrongfully sold the claim to the defendant buyer instead. The plaintiff asserts claims for tortious interference, unjust enrichment, and equitable conversion against the buyer and its assignee. The defendants moved to dismiss for lack of personal jurisdiction and failure to state a claim. The motion to dismiss for lack of personal jurisdiction is granted.

## I.    BACKGROUND[1]

This case is an offshoot of the bankruptcy of FTX Trading Ltd. ("FTX") and its related entities.[2]  An FTX customer had a claim for cryptocurrency and/or other assets held in one or more customer accounts before FTX's bankruptcy[3]; that claim is subject to FTX's pending Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy" and the "Bankruptcy Court").[4]  When our story begins, the claim was held by nonparty Floating Point Group International, LLC ("Seller").  The claim's face value is approximately $10.5 million.[5]

---

[1] Citations in the form "Am. Compl." refer to the plaintiff's verified amended complaint in this action, available at docket item ("D.I.") 12.  Citations in the form "OB at –" refer to the defendants' opening brief, available at D.I. 18.  Citations in the form "AB at –" refer to the plaintiff's answering brief, available at D.I. 20.  Citations in the form "RB at –" refer to the defendants' reply brief, available at D.I. 23.  Citations in the form "Defs. Supp. OB at –" refer to the defendants' opening supplemental brief, available at D.I. 46.  Citations in the form "Pl. Supp. AB at –" refer to the plaintiff's supplemental answering brief, available at D.I. 48.  Citations in the form "Defs. Supp. RB at –" refer to the defendants' supplemental reply brief, available at D.I. 50.  Citations in the form "Pl. Supp. SR at –" refer to plaintiff's supplemental sur-reply brief, available at D.I. 54.  Citations in the form "Defs' Ex." refer to the exhibits attached to the defendants' opening brief, available at D.I. 18.  Citations in the form "Juray Aff." refer to the affidavit of Eric J. Juray, Esq., available at D.I. 21.

[2] Am. Compl. ¶¶ 8–9.

[3] *Id.* ¶ 8; Defs' Ex. 3 to Ex. A ¶ 3 [hereinafter "ACA"].

[4] Am. Compl. ¶ 9.

[5] *Id.* ¶ 10.

In early July 2023, Seller agreed to sell the claim to plaintiff SPCP Group, LLC ("Plaintiff") for pennies on the dollar: $1.36 million.[6] Seller and Plaintiff executed a claims sale agreement (the "CSA").[7] The CSA is governed by New York law and contains an arbitration clause.[8] There is no reason to infer the CSA was negotiated in Delaware. Plaintiff is a Delaware limited liability company.[9] Seller is a Cayman Islands limited liability company.[10]

The CSA did not close. Plaintiff alleges it did not close because Seller failed to satisfy a condition precedent, namely providing certain documents the CSA required by July 19.[11]

Later in July, Seller sold the claim to defendant Svalbard Holdings Limited ("Buyer"). Seller and Buyer entered into an Assignment of Claim Agreement (the "ACA") on July 27.[12] The ACA gave Buyer immediate ownership of the claim.[13]

---

[6] *Id.* ¶¶ 8, 10–11.

[7] *Id.* ¶¶ 12–15.

[8] *Id.* ¶ 16; Defs' Ex. 1 to Ex. A at 2.

[9] Am. Compl. ¶ 2.

[10] *Id.* ¶ 5.

[11] *Id.* ¶¶ 19–26, 32.

[12] *See generally* ACA.

[13] Am. Compl. ¶¶ 14–15.

After Seller sold the claim to Buyer, the claim "skyrocketed in value."[14]

The ACA is governed by New York law, and there is no reason to infer it was negotiated in Delaware. Buyer is a corporation incorporated in the Cayman Islands.[15] It has bought over 200 FTX customer claims,[16] and is a member of the Bankruptcy's Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee").[17] During negotiations, Seller was represented by Eversheds Sutherland (US) LLP ("Eversheds") out of Chicago.[18] Eversheds also represents the Ad Hoc Committee.[19]

"Federal Rule of Bankruptcy Procedure 3001(e) details the procedures creditors must undertake to transfer claims against a bankruptcy estate."[20] Notices of transfer give bankruptcy courts notice of a claim's owner, and allow the transferor an opportunity to object.[21] A notice of transfer as "provided under Rule 3001(e)

---

[14] *Id.* ¶ 48.

[15] *Id.* ¶ 3.

[16] *Id.* ¶ 6(f).

[17] *Id.* ¶ 6(g).

[18] ACA at 16–17.

[19] Am. Compl. ¶ 6(i).

[20] *In re Ellington*, 151 B.R. 90, 92 (Bankr. W.D. Tex. 1993); *see also* Fed. R. Bankr. P. 3001(e).

[21] Fed. R. Bankr. P. 3001(e).

serves 'the interests of sound administration.' The content of a notice of transfer filed under Rule 3001(e)(1) puts the trustee on notice that the original holder of claim against the estate is no longer an interested party with respect to that claim."[22] Here, a notice must be filed for Buyer to be paid directly from the bankruptcy estate.[23]

But Buyer did not need to file a notice of transfer to be paid at all, or to own the claim. The ACA took care of all that. The ACA explains Buyer had "an undivided 100% participation interest" in the claim, and gives Buyer the option to file a notice of transfer with the Bankruptcy Court; it does not make a notice of transfer mandatory.[24] The ACA states,

> Buyer may, at its own expense, file in the Case one or more notices of transfer of claim, in the form attached hereto as Schedule II, for the Transferred Claims at any time after the Transfer. Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this assignment of claim as an unconditional assignment and Buyer herein as the valid owner of the Transferred Rights. Until such time that the Bankruptcy Court substitutes Buyer for Seller, this agreement shall be deemed to grant Buyer an undivided 100% participation interest in the Transferred Rights and the other rights set

---

[22] *In re Ellington*, 151 B.R. at 96; *see also In re Zaleha*, 162 B.R. 309, 315 (Bankr. D. Idaho 1993) (explaining a transfer notice "clear[s] the court record of ambiguities regarding who actually holds a claim" and clarifies "who will be entitled to notice regarding the case, and distribution (if any) from the [bankruptcy] estate").

[23] Fed. R. Bankr. P. 3001(e); *Zaleha*, 162 B.R. at 315.

[24] ACA ¶ 15.

forth herein.[25]

Relatedly, the ACA obligates Seller to pay Buyer its distributions from the claim if the estate ever paid Seller instead of Buyer.

> Seller agrees that, in the event Seller shall receive any payment or distribution (of any kind or nature) (the "Distributions") or notice with respect to or relating to the Transferred Rights after the Transfer, Seller shall accept the same as Buyer's agent and shall hold the same in trust on behalf of and for the sole benefit of Buyer, and shall promptly deliver the same forthwith to Buyer in the same form received, within two (2) business days of Seller's receipt (after which interest shall accrue at the rate of 10% until such payment or Distribution is received by Buyer),, [sic] which are in deliverable form, with the endorsement, assignment, or transfer of powers of Seller when necessary or appropriate. Each payment to be made by either Party hereunder shall be made without set-off, counterclaim or deduction of any kind. ***For the avoidance of doubt, any Distributions received by Seller on account of or relating to the Transferred Rights shall constitute property of Buyer to which Buyer has an absolute right, and Seller shall have no equitable or beneficial interest in such Distributions.***[26]

Buyer caused a notice of transfer to be filed in the Bankruptcy Court. On November 29, defendant Attestor Value Master Fund LP ("Agent," and together with Buyer, "Defendants") acted as Buyer's agent and filed a "Transfer of Claim Other Than For Security" in the Bankruptcy.[27] Agent is an United Kingdom

---

[25] *Id.*

[26] *Id.* ¶ 14 (emphasis added).

[27] *Id.* ¶ 49; Juray Aff. Ex. E.

company, and is Buyer's sole member.[28]  Buyer assigned Agent its right to receive payments on the claim.[29]

Plaintiff commenced this action on May 30, 2024, asserting claims against Buyer and various Seller affiliates.[30]  Those defendants moved to dismiss on July 26.[31]  The Seller entities moved to dismiss in light of the CSA's arbitration clause. On September 6, Plaintiff voluntarily dismissed the Seller entities and amended its complaint (the "Amended Complaint").[32]

The Amended Complaint removed the Seller entities and added Agent as a defendant.[33]  The Amended Complaint asserts three causes of action: (1) equitable conversion against Buyer and Agent, (2) tortious interference with contract against Buyer, and (3) unjust enrichment against Buyer and Agent.[34]  On October 16, Defendants moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state

---

[28] Am. Compl. ¶ 4; Defs; Ex. 3 ¶ 2.

[29] Am. Compl. ¶ 51.

[30] D.I. 1.

[31] D.I. 7.

[32] D.I. 11; D.I. 12.

[33] *See generally* Am. Compl.

[34] Am. Compl. ¶¶ 66–94.

a claim. Oral argument took place on March 27, 2025. At that hearing I requested additional briefing on how transfers of claims work in bankruptcy proceedings.[35] Supplemental briefing closed on May 14.[36]

Plaintiff failed to establish a prima facie case for personal jurisdiction over Defendants. The Amended Complaint is dismissed with prejudice.

## II. ANALYSIS

"Courts can only adjudicate cases in which they have personal jurisdiction over the parties."[37] "When a defendant moves to dismiss under Rule 12(b)(2), the plaintiffs have the burden to show a prima facie case of personal jurisdiction over a nonresident defendant by demonstrating 'specific facts,' and not 'rely[ing] on mere conclusory assertions.'"[38] "A *prima facie* case requires the production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor."[39] "When considering a Rule 12(b)(2) motion, the court is not limited to the

---

[35] D.I. 42; D.I. 45 at 75. I also asked for briefing on whether Seller may be a necessary party under Ct. Ch. R. 19. *See* D.I. 45 at 75. Because I dismiss this action for lack of personal jurisdiction, I do not reach that issue.

[36] D.I. 54.

[37] *Altabef v. Neugarten*, 2021 WL 5919459, at *3 (Del. Ch. Dec. 15, 2021).

[38] *Id.* (quoting *Mobile Diagnostic Gp. Hldgs., LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009)).

[39] *Lone Pine Res., LP v. Dickey*, 2021 WL 2311954, at *4 (Del. Ch. June 7, 2021) (quoting *Baier v. Upper N.Y. Inv. Co. LLC*, 2018 WL 1791996, at *5 (Del. Ch. Apr. 16, 2018)).

allegations of the complaint and can consider evidentiary submissions provided by the parties."[40]

Plaintiff asserts this Court has personal jurisdiction over the nonresident Defendants under 10 *Del. C.* § 3104. Section 3104 determinations have two parts. "First, the Court considers whether there is a basis for jurisdiction under Delaware's long-arm statute, 10 *Del. C.* § 3104. Second, the court must 'evaluate whether subjecting the nonresident to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment (the so-called 'minimum contacts' requirement).'"[41]

Plaintiff relies on Section 3104(c)(1). That provision states:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent . . . [t]ransacts any business or performs any character of work or service in the State . . . .[42]

Plaintiff does not assert that either Buyer or Agent took any act in Delaware with regard to the CSA or ACA. Buyer, Agent, and Seller are foreign entities: only Plaintiff is a Delaware entity. As pled, no part of the act of buying the claim, or

---

[40] *Harris v. Harris*, 289 A.3d 277, 296 (Del. Ch. 2023).

[41] *Mobile Diagnostic*, 972 A.2d at 803 (quoting *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 438 (Del. 2005)).

[42] 10 *Del. C.* § 3104(c)(1).

interfering with Plaintiff's contract to buy it, occurred in Delaware. Plaintiff does not assert the CSA or the ACA was negotiated or signed in Delaware. The injury occurred at Plaintiff's Connecticut headquarters.[43] The contracting parties did not consent to this Court's jurisdiction: the CSA calls for mediation in New York, and the ACA has a New York forum selection clause.[44]

Without a basis to argue that either Defendant's interference with the CSA comprised any Delaware act, Plaintiff zooms out, invoking FTX's Delaware Bankruptcy. Plaintiff argues this Court has personal jurisdiction over Buyer because (1) Buyer, through Agent, filed a notice of transfer in the Bankruptcy,[45] (2) Buyer purchased and tortiously interfered with a "Delaware based asset" that is "subject to the Bankruptcy Case pending in the United States Bankruptcy Court for the District

---

[43] *Am. Bottling Co. v. BA Sports Nutrition*, *LLC*, 2021 WL 6068705, at *17 (Del. Super. Ct. Dec. 15, 2021) ("For tortious interference cases, the place of injury is the *plaintiff's* headquarters."); *see e.g.*, *In re: FTX Trading LTD.*, C.A. No. 22-11068 (JTD), D.I. 1372 (Bankr. D. Del).

[44] ACA ¶ 35; Am. Compl. ¶ 16; *see, e.g.*, *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132 (Del. Ch. 2008) ("A party may expressly consent to jurisdiction by contract. If a party properly consents to personal jurisdiction by contract, a minimum contacts analysis is not required."). Of course, Plaintiff and Defendants have no contract between them, and these provisions do not control a statutory personal jurisdiction analysis for Defendants in this action.

[45] Am. Compl. ¶ 6(c).

of Delaware,"[46] (3) Buyer, through its assignee, will be paid for the Claim through the Bankruptcy,[47] (4) Buyer is a member of the Ad Hoc Committee,[48] and (5) Buyer is one of the largest creditors in the Bankruptcy.[49]  Plaintiff asserts this Court has jurisdiction over Agent because (1) it filed the notice of transfer on Buyer's behalf and (2) Buyer assigned the beneficial interest of some of its customer claims to Agent.[50]

### A. Notice of Transfer

Plaintiff's weightiest argument asserts Defendants transacted business in Delaware when Agent filed the notice of transfer on the Bankruptcy docket.[51]  The narrow question of whether this act is a jurisdictional hook appears to be one of first impression, and I thank the parties for their supplemental briefing.  If Agent filing the notice of transfer on Buyer's behalf constitutes transacting business in Delaware

---

[46] *Id.* ¶ 6(a); *see also id.* ¶ 6(b) ("Svalbard entered into its own distinct contract with FPG for the purchase of that same Delaware based asset subject to the FTX Bankruptcy Case pending in the Delaware Bankruptcy Court.").

[47] *Id.* ¶ 6(d).

[48] *Id.* ¶¶ 6(e), 6(g).

[49] *Id.* ¶ 6(f).  Plaintiff also presses conspiracy jurisdiction on the grounds that Buyer conspired with Eversheds "for [Buyer] to purchase the customer claim from [Seller], knowing [Buyer]'s conduct would have a direct and foreseeable effect in Delaware." *Id.* ¶ 6(i); *see also id.* ¶¶ 6(g)–6(h).

[50] *Id.* ¶¶ 7(a)–7(b).

[51] *Id.* ¶¶ 6(c), 7(a).

and has a sufficient nexus with the cause of action, it may satisfy the long-arm statute.[52] Here, I conclude the notice of transfer lacks the requisite nexus to Plaintiff's claims.[53]

Because Section 3104(c)(1) confers specific, not general, jurisdiction, a Delaware act may only serve as the basis for personal jurisdiction where there is a sufficient nexus between that act and the alleged wrongful conduct. "Because [Defendants] are nonresidents, Delaware's Long Arm Statute requires an in-state act by them 'that sets in motion a series of events which form the basis for the cause of action before the court.'"[54] This Court can only "exercise personal jurisdiction over defendants in a cause of action that 'arises from' a 'jurisdictional act' in Delaware."[55] Under *Papendick v. Bosch* and its progeny, a single act of Delaware paperwork—forming a Delaware entity—can support personal jurisdiction if done as part of a

---

[52] Section 3104 covers conduct by agents. 10 *Del. C.* § 3104(c)(1).

[53] Count I, for equitable conversion, is based entirely on the CSA and the legal rights Plaintiff contends it created when it was executed. The notice of transfer has nothing to do with an equitable conversion theory. Any nexus would be with Count II, for tortious interference, and Count III, for unjust enrichment.

[54] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *8 (Del. Ch. July 14, 2008) (quoting *Sears, Roebuck & Co. v. Sears plc*, 752 F. Supp. 1223, 1227 (D. Del. 1990)).

[55] *Sprint Nextel*, 2008 WL 2737409, at *8 (quoting *Haisfield v. Cruver*, 1994 WL 497868 (Aug. 25, 1994)).

wrongful scheme.[56] In that context, "the principal factor that Delaware courts have examined is the extent of the factual relationship between the [Delaware act] and the cause of action."[57] That Delaware act can be "done as part of a wrongful scheme"[58] or "an integral component of [the] total transaction . . . to which the plaintiff's instant cause of action relates."[59] The plaintiff bears the burden of identifying a sufficient nexus.[60]

Assuming, without finding, that filing a notice of transfer in the Delaware

---

[56] 410 A.2d 148, 152 (Del. 1979); *see also EBG Hldgs. LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *6 (Del. Ch. Sept. 2, 2008) ("Although *Papendick* was decided in the context of determining Constitutional due process, Delaware courts have invoked the *Papendick* rationale to hold that the incorporation and operation of a Delaware subsidiary constitutes the transaction of business in Delaware under § 3104(c)(1)."); *Dow Chem. Co. v. Organik Kimya Hldg. A.S.*, 2017 WL 4711931, at *8 (Del. Ch. Oct. 19, 2017).

Commencing litigation in federal court can also be a jurisdictional hook in state court, assuming there is a relation. *Att'ys Liab. Prot. Soc'y, Inc. v. Eisenhofer*, 2011 WL 2089718, at *2 (Del. Super. Ct. Apr. 29, 2011) (finding nonresident defendant "consented to the court's personal jurisdiction when he filed [a related] federal class action in Delaware" because "[r]egardless of whether Gielata filed [litigation] in state or federal court, his actions were purposefully directed at Delaware such that he should reasonably anticipate litigating related claims, like this one, in a Delaware court").

[57] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*, 2017 WL 3575712, at *6 (Del. Ch. Aug. 18, 2017), *aff'd*, 184 A.3d 1290 (Del. 2018).

[58] *Conn. Gen. Life Ins. Co. v. Pinkas*, 2011 WL 5222796, at *2 (Del. Ch. Oct. 28, 2011).

[59] *Papendick*, 410 A.2d at 152; *Dow Chem. Co.*, 2017 WL 4711931, at *8 ("Put differently, the [Delaware act] must be 'central to the plaintiff's claims of wrongdoing.'" (quoting *Cairns v. Gelmon*, 1998 WL 276226, at *3 (Del. Ch. May 21, 1998))); *see also id.* at *8 n.112 (collecting sources).

[60] *Lone Pine*, 2021 WL 2311954, at *6.

Bankruptcy Court constitutes transacting business in Delaware, Agent's filing lacks the requisite nexus to Plaintiff's claims. As pled, Defendants' wrongful act was interfering with the CSA.[61] Buyer allegedly interfered with the CSA in July. That is when Seller and Buyer entered into the ACA, when the CSA fell through, and when Buyer came to own the Claim.[62] That is when Plaintiff was injured and its claim accrued.

The notice of transfer was filed four months later. Plaintiff pleads the notice of transfer "effectuated" the wrongful act of interfering with the CSA.[63] Yet Plaintiff conceded the notice of transfer did not alter any party's contractual rights to the claim.[64] And a notice of transfer in "no way affects the potential interest a party may have in the case;" instead, it serves "[t]he purpose of clearing the court record of ambiguities regarding who actually holds a claim is to establish who will be entitled

---

[61] Am. Compl. ¶¶ 82, 89–90.

[62] *Id.* ¶¶ 11–15, 23–25, 32, 50.

[63] *Id.* ¶ 49.

[64] Pl. Supp. AB at 5 ("Sure, Defendants still would have had a contractual right to the Claim vis-à-vis FPG if they neglected to file the Transfer Statement (and, as detailed below in Section C, in such case, FPG then would have been required to act as their agent and transact business in the Delaware Bankruptcy Case on their behalf).").

to notice regarding the case, and distribution (if any) from the estate."[65]  Per Rule 3001(e), and as conceded by Plaintiff in its own Bankruptcy Court filing, Plaintiff does not even have standing to object to the transfer notice before the Bankruptcy Court.[66]  Only Seller does; and any Seller objection would be addressed by the Bankruptcy Court.[67]

---

[65] *Zaleha*, 162 B.R. at 315; *id.* at 313–15 (noting in context of standing to object to proposed Chapter 11 plan, claim owner who did not file a transfer statement was still a "party in interest").

[66] Fed. R. Bankr. P. 3001(e)(2); *In re: FTX Trading LTD.*, C.A. No. 22-11068 (JTD), D.I. 4684 (Bankr. D. Del) ("SPCP understands that Federal Rule of Bankruptcy Procedure 3001 purportedly limits the right to object to a transfer of claim other than for security to the alleged transferor . . . .").

[67] Fed. R. Bankr. P. 3001(e)(2).

It is my understanding that the Bankruptcy Court would handle any issues surrounding a proof of claim, and that a proof of claim establishes consent to the bankruptcy court's jurisdiction on the allowance or disallowance of the claim, and counterclaims by the estate. *See, e.g.*, *In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 125 F.4th 1365, 1382 (11th Cir. 2025) ("By filing a proof of claim, Guan consented to the Court's equitable jurisdiction for all matters tied to the allowance or disallowance of her claim. And this makes sense–the Bankruptcy Court must have the power to settle all disputes relating to the claims-allowance process."); *In re PNP Hldgs. Corp.*, 99 F.3d 910, 911 (9th Cir. 1996) ("[A] creditor who files a proof of claim consents to the bankruptcy court's personal jurisdiction over the creditor in proceedings to resolve the bankruptcy estate's objections to the claim."); *In re EXDS, Inc.*, 2004 WL 503545, at *1 (D. Del. Mar. 5, 2004); *see also* 2 Bankruptcy Litigation § 10:77, Westlaw (database last updated Nov. 2024) ("An objection to claim is a core proceeding and the bankruptcy judge can enter a final judgment resolving the dispute."); *In re Am. Export Gp. Int'l Servs., Inc.,* 167 B.R. 311, 313–114 (D.D.C. 1994) (holding that once a creditor has filed a proof of claim, he is subject to personal jurisdiction in that forum for all possible counterclaims that the estate may bring against him).  A claimant's consent to jurisdiction for litigation between the claimant and the estate is irrelevant to any nexus between a claimant's notice of transfer

The ACA, not the notice of transfer, dictated ownership and rights to distribution. The ACA made clear that if Seller received any distribution for the claim, it must hold it in trust and transfer it to Defendants within two days.[68] The ACA is explicit: "For the avoidance of doubt, any Distributions received by Seller on account of or relating to the Transferred Rights shall constitute property of Buyer to which Buyer has an absolute right, and Seller shall have no equitable or beneficial interest in such Distributions."[69] Under the ACA, filing a notice of transfer was optional.[70]

The notice of transfer filed months after the ACA was executed is not integral to Buyer's purported interference with the CSA: it is not part of that wrongdoing at all.[71] Nor is it integral to Agent's unjust enrichment: that was "a consequence of [Seller] breaching the CSA and purporting to sell and convey the Claim to [Buyer]

---

and a third party's contention that the claimant improperly deprived the third party of the right to payment on the claim.

[68] ACA ¶ 14.

[69] *Id.*

[70] *Id.* ¶ 15.

[71] *See Lone Pine*, 2021 WL 2311954, at *6 (finding no nexus between the claim and the formation of Delaware entities years before the wrongdoing); *Baier v. Upper N.Y. Inv. Co. LLC*, 2018 WL 1791996, at *9 (Del. Ch. Apr. 16, 2018) (finding no jurisdiction because domestication of entities in Delaware after the "conclusion of an alleged fraudulent scheme could not have been employed in furtherance of, much less have been integral to, the fraud.").

and [Buyer] assigning its beneficial interest in the Claim to [Agent]."[72]  The notice

of transfer did not further Buyer's scheme.  It did not modify or effectuate Buyer's

contractual rights:  as pled, regardless of any notice of transfer, the CSA was

breached, and the ACA gave Buyer the contractual right to be paid on the claim.[73]

These facts are distinguishable from situations where a Delaware act gives

"legal life to [the challenged contract] as a legally viable contract," and "was

necessary both to complete the transaction and to give effect to the contract that [the

plaintiff] seeks to enforce."[74]  The notice of transfer did not further injure Plaintiff.[75]

---

[72] Am. Compl. ¶ 89.

[73] In this way, the notice of transfer is distinguishable from the UCC financing statement in *Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, which was filed "in conjunction with sham security agreements" and "ensure[d] that the defendants gained priority over other claimants, such as Plaintiffs."  2013 WL 6184066, *4 (Del. Ch. Nov. 21, 2013).  The wrongdoing in *Lake Treasure* was a year-long "conspiracy to take ownership of the [at issue] IP, misappropriate the [at issue] IP, and retain all of the value of the misappropriation." *Id*. at *3.  Here, the wrongdoing manifested in a single contract that granted Buyer the right to collect on the claim.

[74] *Terramar*, 2017 WL 3575712, at *7 ("The Operating Agreement is the constitutive document that governs the Company. The business deal that Terramar seeks to enforce was embodied in the Operating Agreement and implemented through the creation of the Company. Forming the Company was the act that gave 'legal life to [the Operating Agreement] as a legally viable contract.' Creating the Company was necessary both to complete the transaction and to give effect to the contract that Terramar seeks to enforce." (quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *10 n.32 (Del. Ch. Mar. 31, 2003))).

[75] *See BrandRep, LLC v. Ruskey*, 2019 WL 117768, at *2 (Del. Ch. Jan. 7, 2019) (concluding the formation of an entity after the defendant started his scheme of misappropriation satisfied Section 3104 where the defendant created a Delaware entity and

Nor did it "set in motion a series of events which form the basis for the cause of action before the court."[76]  While the notice of transfer provided Defendants with notice of bankruptcy filings and direct distribution,[77] those benefits are unrelated to Plaintiff's lost right to be paid on the claim, Defendants' alleged wrongful interference with that right, and Defendants' resultant ability to be paid.

Plaintiff's tortious interference and unjust enrichment claims are based on the two contracts to purchase the customer claim, which lack any Delaware ties. Defendants' administrative filing with the Bankruptcy Court months after allegedly busting Plaintiff's agreement to buy the claim lacks the requisite nexus to its claims based on busting that agreement.[78]

---

transferred the misappropriated assets to the new entity for purposes of using them to improperly compete).

[76] *Harris*, 289 A.3d at 306 (quoting *EBG Hldgs.*, 2008 WL 4057745, at *6).

[77] Pl. Supp. AB at 4–5.

[78] I also question whether filing the notice of transfer in a federal bankruptcy court in the District of Delaware would satisfy due process.  *See AeroGlobal Cap.*, 871 A.2d at 440 ("The focus of this inquiry is whether [the defendant] engaged in sufficient 'minimum contacts' with Delaware to require it to defend itself in the courts of this State consistent with the traditional notions of fair play and justice.  In order to establish jurisdiction over a nonresident defendant, the nonresident defendant's contacts with the forum must rise to such a level that it should 'reasonably anticipate' being required to defend itself in Delaware's courts." (citations omitted)).  That filing did not invoke Delaware's interest as a sovereign, like forming a Delaware entity does.  *See Papendick*, 410 A.2d at 152 ("It is reasonable to assume that RB saw benefits and advantages in purposefully selecting the State of Delaware and utilizing its laws, above all others, for the creation of RBNA in the execution of its agreement with B-W.").  Nor did it commence a related litigation in Delaware.  *E.g.*, *Eisenhofer*, 2011 WL 2089718, at *2.  Thousands of creditors file similar

### B. Purchase Of The Claim And Other Arguments

I now turn to Plaintiff's more tangential arguments. First, Plaintiff asserts Buyer transacted business in Delaware because it contracted to "purchase [an] asset located in Delaware and subject to the Delaware Bankruptcy Case," and tortiously interfered with Plaintiff's contract to do the same.[79] Purchasing an asset can constitute transacting business, but that purchase must still be a Delaware act. Plaintiff has not made a prima facie showing that Buyer's purchase of the claim was a Delaware act. The claim is based on certain assets, including cryptocurrency and other digital assets, that existed in one or more FTX customer accounts before the Bankruptcy.[80] Plaintiff has not alleged or attempted to root those assets, or those accounts, in Delaware. Property in a bankruptcy estate could be located anywhere.[81]

And the claim itself is another level of abstraction removed from the account

---

notices before the Bankruptcy Court. I question whether those filers may fairly expect to be haled into a Delaware state court to adjudicate whether they committed a tort against a third party in coming to own that claim. I do not resolve this issue today.

[79] AB at 4, 16; Am. Compl. ¶¶ 6(a)–6(b).

[80] ACA ¶ 3 ("Buyer acknowledges and agrees that the Transferred Rights constitute amounts owed by the Debtors to Seller or rights to recover property (including crypto currency or other digital assets) to which Seller has title . . . .").

[81] 11 U.S.C. § 541(a) (defining a bankruptcy estate to be "comprised of all the following [statutorily enumerated] property, *wherever located* and by whomever held" (emphasis added)).

or the assets it held: it is a legal right to payment in the Bankruptcy.[82] Plaintiff offers no reason to conclude that legal right is an "asset located in Delaware." Neither Plaintiff nor I could find any authority asserting that creditor claims are assets in or of the state in which the bankruptcy is administered.[83] To the contrary, it seems the claim Buyer bought is an intangible entitlement Seller held, based on FTX's prebankruptcy customer account(s), created by the Bankruptcy Code. Its only Delaware link is the claim's recognition on the Bankruptcy Court's claims agent's register, and enforcement by the Bankruptcy Court. I cannot conclude the claim is located in Delaware.[84]

Second, Plaintiff asserts Buyer is subject to jurisdiction because it may get paid on the claim through the Bankruptcy after the court "approves a plan of reorganization."[85] But Plaintiff has not pled Buyer has been paid; only that it might. This is a hypothetical future event; even if payment on the claim is a Delaware act, it has not happened yet. Jurisdiction cannot be hinged on potential future conduct.

---

[82] 11 U.S.C. § 101(5)(A).

[83] *See* D.I. 45 at 38–40.

[84] *See Tabacalera Severiano Jorge, S. A. v. Standard Cigar Co.*, 392 F.2d 706, 714 (5th Cir. 1968) ("The situs of intangible property is about as intangible a concept as is known to the law.").

[85] Am. Compl. ¶ 6(d).

Third, Plaintiff asserts Buyer is subject to personal jurisdiction because it is a member of the Ad Hoc Committee, which "conducts business in Delaware" and is advised "at least in part" by Delaware attorneys.[86] The Amended Complaint alleges Buyer used its "relationships with advisors" from the Ad Hoc Committee to offer Seller better terms than Plaintiff had agreed upon.[87] Even assuming the Ad Hoc Committee members acted in Delaware, those acts must have a nexus to Plaintiff's claims.[88] Buyer's superior offer to Seller did not arise out of any Delaware action by the Ad Hoc Committee or its members. The offer might have been improved by information Buyer learned from its Ad Hoc Committee relationship, but that information has no Delaware ties and was not "an integral component of the total transaction to which plaintiff[']s cause of action relates."[89]

---

[86] *Id.* ¶ 6(g).

[87] *Id.* ¶6(h).

[88] *Sprint Nextel*, 2008 WL 2737409, at *8.

[89] *Dow Chem.*, 2017 WL 4711931, at *8 (quoting *Pinkas*, 2011 WL 5222796, at *2).

Plaintiff's briefing stretches Buyer's interactions with Eversheds via the Ad Hoc Committee into a conspiracy in order to argue conspiracy jurisdiction. AB at 20–21; Am. Compl. ¶ 6(i) ("Despite that admonition, the Eversheds attorney and Svalbard, on information and belief, conspired for Svalbard to purchase the customer claim from FPG . . . ."). But as a matter of law, a conspiracy claim cannot be based on breach of contract or tortious interference with contract as the underlying wrong. *KT4 Pr's LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *31 (Del. Super. Ct. June 24, 2021) ("A civil conspiracy claim also fails if the underlying wrongful act alleged is a breach of contract, or tortious interference with an existing contract."); *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009). And the Amended Complaint does not plead the elements of

Fourth, Plaintiff asserts personal jurisdiction is proper because Buyer is one of the largest creditors in the Bankruptcy due to its many claims.[90] But there is no nexus between Buyer's other claims and Plaintiff's cause of action.

As to Agent, Plaintiff asserts personal jurisdiction based on Buyer's assignment of its rights under the ACA. But Plaintiff has not alleged any Delaware ties to the reassignment.[91]

### III. CONCLUSION

Defendants' motion to dismiss is granted. The Amended Complaint is dismissed with prejudice for lack of personal jurisdiction.

---

conspiracy. *NACCO*, 997 A.2d at 35 (listing the elements of conspiracy: "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage." (quoting *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149–50 (Del. 1987))). Eversheds is not a defendant and is only mentioned once outside the Amended Complaint's section on jurisdiction. And Plaintiff did not brief any of the elements of conspiracy jurisdiction. *See Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982). Plaintiff failed to identify any Delaware act by Eversheds that is attributable to Buyer. Plaintiff asserts Buyer became associated with Eversheds through the Delaware Bankruptcy, and specifically the Ad Hoc Committee, but is still left searching for a Delaware act to anchor conspiracy jurisdiction. Seller's Eversheds attorney for the ACA was based in Chicago, and Eversheds does not have a Delaware office. *Offices*, Evershesd, https://www.eversheds-sutherland.com/en/united-states/offices?country=United+States (last visited Aug. 14, 2025); RB at 13. Plainly, jurisdictional discovery is not warranted.

[90] Am. Compl. ¶6(f).

[91] That "[Buyer] has assigned the beneficial interest in all or most of the customer claims it has purchased" to Agent does not make the assignment of this claim a Delaware act. *Id.* ¶ 7(b).

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor


MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*